RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0183p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MARVIN NICHOLSON (21-1768); BRYAN SORRELL
(21-1779),

　　　　　　　　　　*Petitioners-Appellants*,

　　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　　　　*Respondent-Appellee*.

⎤
⎟
⎟
⎟
⎟
⎟
⎬　　Nos. 21-1768/1779
⎟
⎟
⎟
⎟
⎟
⎦

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:13-cr-20764; 2:19-cv-10600 (Nicholson); 2:19-cv-10420 (Sorrell);
Paul D. Borman, District Judge.

Argued: July 20, 2023

Decided and Filed: August 16, 2023

Before: GILMAN, LARSEN, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Michael J, West, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant in 21-1768. Jeremy Gordon, JEREMY GORDON, PLLC, Mansfield, Texas, for Appellant in 21-1779. Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Michael J, West, HOGAN LOVELLS US LLP, Washington, D.C., for Appellant in 21-1768. Jeremy Gordon, JEREMY GORDON, PLLC, Mansfield, Texas, for Appellant in 21-1779. Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

NALBANDIAN, Circuit Judge.   An indictment charged motorcycle-gang members Marvin Nicholson and Bryan Sorrell with one count of conspiracy and one count of aiding-and-abetting assault under the Violent Crimes in Aid of Racketeering ("VICAR") statute.  At trial, the district court instructed the jury that either of those two offenses could serve as a predicate offense for another count involving the use or carrying of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c).  The jury convicted both Nicholson and Sorrell on those three counts, among others.  And we affirmed.  Now, under 28 U.S.C. § 2255, they appeal the district court's refusal to vacate their § 924(c) convictions.  Because the § 924(c) convictions rested on a valid predicate offense, and because the jury-instruction error on an invalid predicate offense was harmless, we affirm.

**I.**

As "national enforcer," Marvin Nicholson oversaw gang members like Bryan Sorrell in the Phantom Motorcycle Club ("PMC")—an outlaw motorcycle gang and multi-state racketeering enterprise. *United States v. Nicholson*, 716 F. App'x 400, 404, 408 (6th Cir. 2017).  To grow PMC's reputation as the "toughest" or "baddest" outlaw motorcycle club out there, Nicholson, Sorrell, and the rest of the gang targeted rival clubs in a series of confrontations, forcefully stripping them of their leather biker vests (known as "rags")—"the ultimate sign of disrespect." *Id.* at 404.  And these assaults involved violence and the use of firearms.

When a dispute left a PMC leader feeling disrespected, Nicholson and other leaders got a team together and outlined a plan to locate rival gang members and "take [their] rags by force." *Id.* at 409.  And it didn't take long for the team to gather firearms and drive to a rival clubhouse.  A stakeout spanning several hours almost proved unsuccessful.  That is, up until Nicholson, Sorrell, and some others spotted a rival gang member, Leon McGee, heading to his vehicle with his girlfriend.

Sorrell and another PMC member approached McGee and attempted to take his rags. When McGee and his girlfriend attempted to get into their vehicle and leave, the PMC members pulled McGee out of his vehicle. And a fight ensued. Sorrell punched McGee. McGee stabbed Sorrell. So Sorrell shot McGee. And he fired multiple times, even striking McGee's face.[1] Nicholson was also "present at the scene of the shooting." *Id.* at 409.

Weeks later, two PMC members fell victim to a drive-by shooting by a rival gang, and one PMC member died of his wounds. PMC's president wanted revenge. So he held a meeting with Nicholson, Sorrell, and others to plan the murder of three rival gang members as part of a larger scheme to "attack and kill a large number of" other rival members who would later attend the murdered members' funerals. *Id.* at 409–10. With that as the gameplan, "Nicholson dispensed orders to PMC members to carry out the first murder, and Nicholson and other PMC members began preparations." *Id.* at 410.

But the plans fell through. Law enforcement executed search warrants on Nicholson's residence and took him into custody. And later, an indictment charged Nicholson and Sorrell with several counts—some arising under VICAR.

Of relevance were Counts Five, Six, and Seven. Count Five charged Nicholson and Sorrell with VICAR aiding-and-abetting assault with a dangerous weapon, in violation of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2. Next, Count Six charged them with VICAR conspiracy—that is, a conspiracy to assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(6). The indictment and jury instructions each specified that Count Five and Count Six related to the same incident—the assault of rival gang member Leon McGee "[o]n or about September 8-9." (R. 201, Indictment, p. 23–24; R. 467, Jury Instructions, PageID 5796, p. 67–68, 71.)

Count Seven charged them with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). The court instructed that each defendant could be found guilty of this count if, among other things, the jury found that Nicholson and

---

[1]Later at trial, "Sorrell's own statements caught on recording [indicated] that [he] shot McGee." *Nicholson*, 716 F. App'x at 411; (*see* R. 740, Gov't Exhibits, p. 48 ("I'm the one who shot him."); *id.* at 51 ("I know I shot [him]."); *id.* at 64 ("So when I shot [McGee] and went down the street . . . .").)

Sorrell had "committed either" a VICAR aiding-and-abetting assault with a dangerous weapon "as charged in Count Five" or a VICAR conspiracy "as charged in Count Six." (R. 467, Jury Instructions, PageID 5796, p. 76.) The court did not instruct the jury to unanimously decide which predicate it relied on—whether that be Count Five, Count Six, or both.

In any event, the jury convicted Nicholson and Sorrell on Counts Five, Six, and Seven, among others. For Count Seven, the district court sentenced them each to 120 months of imprisonment, to be served consecutively to their sentences on the other counts. And in total, the court sentenced Nicholson to 480 months and Sorrell to 252 months of imprisonment.

They both appealed. And this Court affirmed their convictions and sentences. *Nicholson*, 716 F. App'x at 423. Later, Nicholson and Sorrell moved to vacate their convictions under 28 U.S.C. § 2255. A magistrate judge issued a report and recommendation to deny all claims. And in adopting the recommendation, the district court denied their motions to vacate and declined to grant a certificate of appealability on any of their claims. So Nicholson and Sorrell appealed. This Court granted Nicholson's and Sorrell's separate requests for certificates of appealability, as well as Nicholson's request to expand his certificate of appealability. And we consolidated their appeals.

## II.

Under 28 U.S.C. § 2255, a federal prisoner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence" based on, among a few other things, a claim that the sentence was "imposed in violation of the . . . laws of the United States . . . or [wa]s otherwise subject to collateral attack." 28 U.S.C. § 2255(a). When a district court denies such a motion (as the court did here), we review legal issues de novo and uphold the court's "factual findings . . . unless they are clearly erroneous." *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013) (citation omitted).

## III.

Nicholson and Sorrell ("Petitioners") raise two issues on appeal. First, they argue that the district court erred in concluding that Count Seven rested on a valid crime-of-violence predicate

under 18 U.S.C. § 924(c).  Second, even if the court didn't err, Petitioners argue that we must vacate Count Seven because the jury could have relied on an invalid predicate in reaching its general verdict for that conviction.  We'll address each in turn.

**A.**

Petitioners first argue that we should reverse and vacate their conviction on Count Seven because it was not predicated on a valid crime of violence.  The district court instructed the jury that it could convict Petitioners on Count Seven if it found either (1) a VICAR conspiracy or (2) a VICAR aiding-and-abetting assault with a dangerous weapon—both of which the jury separately found Petitioners guilty of in Counts Five and Six.  So our first inquiry turns on whether either offense constitutes a "crime of violence," as required by Count Seven.

18 U.S.C. § 924(c) penalizes "any person who, during and in relation to any *crime of violence* or drug trafficking crime," uses or carries a firearm.  18 U.S.C. § 924(c)(1)(A) (emphasis added).  We used to have two subparts under § 924(c)—the "residual clause" and the "elements clause"—that defined the phrase "crime of violence."  That is, up until the Supreme Court struck § 924(c)'s "residual clause" as unconstitutionally vague.  *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

So now, we look only to the provision's "elements clause" to define a "crime of violence."  And that clause defines the phrase as an "offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  With that in mind, now "a predicate offense qualifies as a crime of violence only if use of force is an element of the offense."  *United States v. Woods*, 14 F.4th 544, 552 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 910 (2022).

Additionally, courts must evaluate whether an offense fits the "elements clause" using the "categorical approach"—meaning that we look to a predicate crime's elements in the abstract, not to "how any particular defendant may commit the crime."  *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022).  We must ask whether the predicate offense in "every" case will have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  *Wallace v. United States*, 43 F.4th 595, 601 (6th Cir. 2022) (quoting 18 U.S.C.

§ 924(c)(3)(A)).  And the categorical approach requires that the answer to that question be yes. *See id.*

Using this framework, we must determine whether a VICAR conspiracy or a VICAR aiding-and-abetting assault with a dangerous weapon qualifies as a "crime of violence" under § 924(c).

**1.**

Start with VICAR conspiracy.  *See* 18 U.S.C. § 1959(a)(6).  The United States concedes that this predicate crime does not qualify as a crime of violence.  (*See* 21-1768 Appellee Br. at 12 ("[I]t was error to instruct the jury that it could find [Petitioners] guilty of count seven based on the conspiracy alleged in count six."); 21-1779 Appellee Br. at 10 (same).)  We agree.

Since the Supreme Court's decision in *United States v. Davis*, this Court has determined that § 924(c)'s elements clause "excludes conspiracy charges" as crimes of violence.  *Woods*, 14 F.4th at 552.  Before *Davis*, § 924(c)'s residual clause considered "conspiracies to commit violent crimes" as crimes of violence.  *Id.* (citing *United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019)).  Post-*Davis*, things changed.  Now—without the residual clause available— most conspiracy convictions under § 924(c) "must be set aside."  *Ledbetter*, 929 F.3d at 361. That's because most conspiracy convictions do not contain "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).

So too here.  The VICAR conspiracy at issue required that the jury find a few things— none of which involved the use, attempted use, or threatened use of physical force.  To convict Petitioners, the jury had to find that PMC was an "enterprise" "engaged in racketeering activity" in "interstate or foreign commerce"; and that while Petitioners had "positions" in PMC, they "conspire[d] to commit a crime involving . . . assault with a dangerous weapon" for the "purpose of . . . maintaining or increasing [their] position[s] in" PMC.  18 U.S.C. § 1959(a)(6), (b).

Not one of those findings satisfies § 924(c)'s elements clause.  *Agreeing* to use force is different from threatening to use, attempting to use, or actually using force.  No assault or other

sufficient act involving force *had* to occur before someone could be convicted of VICAR conspiracy. So it's evident that not "every" VICAR conspiracy will involve the "use, attempted use, or threatened use of physical force against the person or property of another." *Wallace*, 43 F.4th at 601 (quoting 18 U.S.C. § 924(c)(3)(A)) (holding that Hobbs Act conspiracy cannot serve as a predicate under § 924(c)); *see also Portis v. United States*, 33 F.4th 331, 334 (6th Cir. 2022) (recognizing the same). Thus, Count Six's VICAR conspiracy cannot serve as the predicate for Count Seven.

**2.**

Given that a VICAR conspiracy isn't a crime of violence, we turn to whether a VICAR aiding-and-abetting assault with a dangerous weapon is. The short answer: it is.

We again must see if an element of the offense requires the "use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A). Two parts of Title 18 work together to create the offense of a VICAR aiding-and-abetting assault with a dangerous weapon. The first: the VICAR assault with a dangerous weapon provision, 18 U.S.C. § 1959(a)(3). To find someone guilty, the statute's "relevant predicate offense" requires that a defendant have committed (1) "an assault" (2) "with a dangerous weapon" (3) to further "racketeering activity." *Manners v. United States*, 947 F.3d 377, 380 (6th Cir. 2020).[2]

At work with § 1959(a)(3) is § 2—the general aiding-and-abetting provision for "offense[s] against the United States." 18 U.S.C. § 2(a); *see United States v. Williams*, 941 F.3d 234, 237 (6th Cir. 2019) (recognizing that "aiding and abetting is 'a theory of liability embodied in every federal indictment, whether specifically charged or not, and not a distinct substantive crime'" (citation omitted)). And it states that anyone who "aids" or "abets" the "commission" of "an offense" is "punishable as a principal." 18 U.S.C. § 2(a). Together, §§ 1959(a)(3) and 2

---

[2]In *Manners*, this Court recognized that 18 U.S.C. § 1959(a) is "divisible" into different substantive offenses because it "list[s] elements in the alternative, and thereby define[s] multiple crimes." 947 F.3d at 380 (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)). Specifically, § 1959(a)(3) concerns either the "assault with a dangerous weapon" or "assault resulting in serious bodily injury." 18 U.S.C. § 1959(a)(3). But here, as in *Manners*, § 1959(a)(3)'s relevant offense is "assault with a dangerous weapon." 947 F.3d at 380. (*See* R. 201, Indictment, p. 23–24; R. 467, Jury Instructions, PageID 5796, p. 67–68.)

create the predicate offense at issue here:  VICAR aiding-and-abetting assault with a dangerous weapon.

To find Petitioners guilty of that predicate offense, the jury had to find, among other things, that someone completed a VICAR assault.  That's because unlike a conspiracy or attempt—which are separate, inchoate offenses—aiding and abetting is a theory of liability that requires the jury to find a completed, principal offense.  *See Rosemond v. United States*, 572 U.S. 65, 70–71 (2014); *United States v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007) (recognizing that an aiding-and-abetting conviction "depends first" on whether someone the defendant helped "could have been convicted of violating [the offense] as [a] principal[]").

In other words, Petitioners couldn't be said to "aid" or "abet" an offense if no offense had ever been completed.  That's why, as with every aiding-or-abetting crime, "the jury [had to] find that all essential elements of the underlying crime were committed by someone." *United States v. Horton*, 847 F.2d 313, 322 (6th Cir. 1988); *see also* Sixth Circuit Pattern Criminal Jury Instructions, § 4.01(2) (requiring the jury to find "that the crime of [the principal offense] was committed" to convict someone as an "aider and abettor").[3]

When "[l]ook[ing] at the elements of the underlying crime," we can see that the VICAR aiding-and-abetting provisions, 18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2, "require the government to prove the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2025.  VICAR aiding-and-abetting assault *requires* the government to prove that the principal offense—a VICAR assault with a dangerous weapon under 18 U.S.C. § 1959(a)(3)—be completed.

---

[3]Petitioners fault the government and district court for treating the relevant predicate crime as "assault with a dangerous weapon" instead of VICAR *aiding-and-abetting assault* with a dangerous weapon.  But that's an inaccurate account of what the government is arguing and what the district court found.  They instead focused on the proper predicate:  VICAR aiding-and-abetting assault with a dangerous weapon. (*See* 21-1768 Appellee Br. at 1–2; 21-1779 Appellee Br. at 9; R. 905, Report and Recommendation for Nicholson, PageID 12908, p. 25.)  What Petitioners fail to recognize is that to prove that someone aided and abetted a crime, a jury must first find that the crime itself was completed. *See Rosemond*, 572 U.S. at 70–71; *Gardner*, 488 F.3d at 713.  The district court did, however, (perhaps improperly) rely on Michigan Law when defining an assault in its habeas ruling.  But because we review the elements here de novo, it doesn't matter.  We focus on the relevant predicate offense:  VICAR aiding-and-abetting assault with a dangerous weapon—what Petitioners were convicted of under Count Five.

Importantly, this Court has already determined that a VICAR assault with a dangerous weapon under § 1959(a)(3) is a "'crime of violence' within the meaning of § 924(c)(3)(A)." *Manners*, 947 F.3d at 382; *see also United States v. Frazier*, 790 F. App'x 790, 791 (6th Cir.) ("[A]ssault with a dangerous weapon in aid of racketeering under § 1959(a)(3) categorically involves the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person."), *cert. denied*, 141 S. Ct. 314 (2020). We reached that conclusion because "the dangerous weapon element of § 1959(a)(3) elevates even the most minimal type of assault into violent force sufficient to establish this offense as a crime of violence." *Manners*, 947 F.3d at 382 (cleaned up).

So we know that the principal offense here—VICAR assault with a dangerous weapon—qualifies as a crime of violence. And we know that the jury had to find that a VICAR assault occurred to convict Petitioners of VICAR aiding-and-abetting assault. That means the jury had to find a crime of violence as an element of the conviction.

The next question then is whether any distinction exists between aiding and abetting the commission of a crime and committing that principal offense. It doesn't. *See United States v. Richardson*, 948 F.3d 733, 741–42 (6th Cir. 2020). That's because "[a]iding and abetting is simply an alternative theory of liability indistinct from the substantive crime." *Id.*; *see also Alvarado-Linares v. United States*, 44 F.4th 1334, 1348 (11th Cir. 2022) ("One who aids and abets a crime of violence 'necessarily commits a crime that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" (citation omitted)); *United States v. Worthen*, 60 F.4th 1066, 1070 (7th Cir. 2023).

Thus, VICAR aiding-and-abetting assault with a dangerous weapon qualifies as a crime of violence because an element of the offense requires a finding of the use or threatened use of physical force. And we affirm Count Seven under that predicate offense.

Petitioners' arguments to the contrary do not persuade us otherwise. To start, they argue that the Supreme Court's treatment of an attempt crime in *United States v. Taylor* suggests that aiding-and-abetting crimes do not qualify as crimes of violence. *See* 142 S. Ct. 2015 (2022). That's not the case. *Taylor* held that "attempted" Hobbs Act robbery does not satisfy § 924(c)'s

elements clause because that "attempt" crime did not have an element that "requires proof that the defendant used, attempted to use, or threatened to use force." *Id.* at 2021. Indeed, the crime only required a "substantial step"—which could be any overt act showing an intention to use force. *Id.* at 2020 ("[A]n intention is just that, no more.").

*Taylor* does not counsel against holding that VICAR aiding-and-abetting assault with a dangerous weapon is a crime of violence. That's because an attempt at an incomplete crime can differ from aiding and abetting a completed crime. *See United States v. Stevens*, 70 F.4th 653, 661 (3d Cir. 2023) (recognizing the "distin[ction] [between] § 2 offenses [and] the types of inchoate offenses that require only that a defendant take a 'substantial step' towards a completed offense" because § 2 offenses "require[] the Government to prove that the substantive crime has been committed" (cleaned up)). And caselaw makes that much clear. An attempt at or a substantial step towards a VICAR assault may not involve the use, attempted use, or threatened use of force in "every" case. *Wallace*, 43 F.4th at 601; *see also Taylor*, 142 S. Ct. at 2021. In contrast, as explained above, VICAR aiding-and-abetting assault with a dangerous weapon *does*. So how *Taylor* dealt with attempt crimes does not change our outcome on Petitioners' aiding-and-abetting conviction.

And *Taylor* says nothing otherwise about aiding and abetting a completed offense. Instead, the case affirms that this Court has a "straightforward job: Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force." *Taylor*, 142 S. Ct. at 2025. And in doing so, we find that § 924(c)'s "force" requirement is met here.

Next, Petitioners try to redefine the elements of VICAR aiding-and-abetting assault with a dangerous weapon. Rather than focus on the completed principal offense, they rely on *Rosemond v. United States* for the premise that "a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." 572 U.S. at 71. On this premise, Petitioners reason that their aiding-and-abetting conviction required only those two elements (an affirmative act and intent). And they add that almost anything can constitute an affirmative act besides the use of force: "words, acts, encouragement, support, or presence." *Id.* at 73.

But *Rosemond* gets Petitioners only so far. That's because, before a jury can answer those questions, it must "first" find that a VICAR assault was completed. *Gardner*, 488 F.3d at 713; *see Rosemond*, 572 U.S. at 70–71; *Horton*, 847 F.2d at 322. Nothing gets around that force element here.

Petitioners also try to add to the requirements of § 924(c)'s elements clause. In their eyes, § 924(c) requires that *Petitioners*—not anyone else—be the ones to use, attempt to use, or threaten to use force. Quoting some discussion in *Taylor*, they argue that § 924(c)'s elements clause "require[s] the government to prove that the *defendant* used, attempted to use, or [] threatened to use force." 142 S. Ct. at 2020 (emphasis added). And with that language, they argue that the government cannot point to one element in a VICAR aiding-and-abetting assault with a dangerous weapon that requires a showing that Petitioners *themselves* used, attempted to use, or threatened to use force.

But § 924(c) doesn't require a finding that a defendant himself be the one to use force in a predicate offense—it requires only that the predicate felony "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). In *Taylor*, the Supreme Court dealt with an attempt crime, which required the jury to find only that the *defendant* took "a substantial step." 142 S. Ct. at 2020. And so, because the key element in an attempt crime focused on the defendant—that is, the defendant's liability was based solely on only his "substantial step," no one else's—the Supreme Court focused on the defendant's conduct, noting that "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* But unlike an attempt crime, the predicate crime here—VICAR aiding-and-abetting assault with a dangerous weapon—at least when it comes to force, does not focus on a particular *defendant's* conduct. It instead requires a defendant to aid or abet *someone else* using or threatening to use force.

So Petitioners' argument falls flat. *Cf. United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022) (rejecting a similar argument when defining a "violent felony" because 18 U.S.C. § 3559(c)(2)(F)(ii) "requires use of force by someone [and] that someone didn't have to be [the defendant]"). Simply put, the "attempt" context, which deals only with what a defendant does, is

distinct from the "aiding and abetting" context, where the conduct at issue can be completed by someone else.  So long as the principal offense (here, VICAR assault) was committed (as the jury found), and Petitioners aided and abetted that offense (as the jury convicted them of under Count Five), it is "inconsequential" that their "acts did not advance each element of the offense." *Rosemond*, 572 U.S. at 74–75.  Requiring that the *defendant* himself commit the crime of violence would add another requirement to § 924(c) that is not there.

And *Taylor* does not require that we hold otherwise.  Although the defendant-specific showing that Petitioners advocate for (i.e., a predicate offense requiring that the defendant himself use force) *could* form a crime of violence, § 924(c) asks only for a use of force generally.  "[A] good rule of thumb for reading [Supreme Court] decisions is that what they say and what they mean are one and the same." *Mathis v. United States*, 579 U.S. 500, 514 (2016).  Looking at *Taylor*, it's clear:  "The only relevant question is whether the *federal felony* at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force."  142 S. Ct. at 2020 (emphasis added).  That inquiry does not involve asking whether a defendant was the one to use it.

And even if *Taylor* did change the focus of "use of force" more generally to what the *defendant* does (again, it didn't), courts have long held that aiders and abettors are as culpable as principal offenders for the principal offenders' conduct.  *See, e.g.*, *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1218 (2023) (noting that "such common-law terms" like aiding and abetting "bring the old soil with them" (cleaned up)); *Rosemond*, 572 U.S. at 70 (explaining that 18 U.S.C. § 2 "reflects a centuries-old view of culpability:  that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission"); 4 William Blackstone, *Commentaries on the Laws of England* 34, 39 (1795) ("And the general rule of the ancient law (borrowed from the Gothic constitutions) is this, that accessories shall suffer the same punishment as their principals:  if one be liable to death, the other is also liable." (cleaned up)).  As a result, Petitioners' argument that we should focus on *their* conduct overlooks how common-law (and modern) courts have treated aiders and abettors—as principals.

**B.**

Petitioners next argue that, even if VICAR aiding-and-abetting assault with a dangerous weapon qualifies as a crime of violence (it does), we should still vacate their conviction on Count Seven because the jury did not explicitly answer what predicate offense met § 924(c)'s crime-of-violence requirement. They reason that the jury could have relied on an invalid predicate—Count Six's VICAR conspiracy—to convict them on Count Seven.

Recall that the district court gave the jury two choices of what could qualify as a "crime of violence" under Count Seven: Count Five's VICAR aiding-and-abetting assault with a dangerous weapon and Count Six's VICAR conspiracy. And because the court didn't instruct the jury to unanimously agree on what count(s) qualified, the jury returned a general verdict on Count Seven—it did not answer whether Petitioners "use[d] and carr[ied] a firearm during and in relation to" Count Five, Count Six, or both counts. (R. 467, Jury Instructions, PageID 5796, p. 76; *see* R. 469, Verdict, at 4–5.) What we do know, however, is that Petitioners were convicted of both Counts Five and Six and that Count Five's VICAR aiding-and-abetting assault with a dangerous weapon is a crime of violence. So we have one valid predicate and one invalid predicate that served as alternative bases for the jury to convict Petitioners on Count Seven's § 924(c) conviction.

The question then becomes whether Petitioners' Count Seven "conviction under a general verdict . . . may have rested on an unlawful ground." *Baugh v. United States*, 64 F.4th 779, 781 (6th Cir. 2023) (citing *Stromberg v. California*, 283 U.S. 359, 368 (1931)). To answer that, our Circuit's recent decision in *Baugh v. United States* provides a harmless-error framework. *See id.* at 781–82, 784 (holding that an error "was harmless where the jury convicted a defendant of two different offenses on which it might have predicated his § 924(c) conviction and [where] only one of those offenses remain[ed] a valid predicate after *Davis*").

To start, we determine whether an error occurred. *Id.* at 781. And here, it did. "[T]he jury was instructed that it could base [Petitioners'] conviction[s] for the § 924(c) count solely on a conviction for [Count Six's VICAR] conspiracy." *Id.* That count (after *Davis*) is not a crime

of violence that can sustain Count Seven. *See supra* Part III.A.1. But even though there was an error, that's not the end of the story.[4]

Because Petitioners "seek[] federal habeas relief under [28 U.S.C. § 2255]" for this error, "we also consider whether [it] was harmless under the standards articulated by the Supreme Court" in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).[5] *Baugh*, 64 F.4th at 781–82 (collecting cases). That means we can remedy the error "only if the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 782 (quoting *Brecht*, 507 U.S. at 623).

To get relief, § 2255 petitioners must establish that a trial error "resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637. And to assess actual prejudice, *Baugh* instructs that we ask whether "the conduct underlying the valid predicate offense was '*inextricably intertwined*' with the conduct underlying the invalid predicate offense." *Baugh*, 64 F.4th at 782 (emphasis added). The idea is that if both predicates stem from the same conduct, we can infer that the jury found the elements giving rise to a § 924(c) conviction—knowingly using or carrying a firearm during and in relation to a crime of violence in relation to *both* the valid and invalid predicates—beyond a reasonable doubt. And so, even if one predicate is not a crime of violence, so long as the other one is, we can infer that no actual prejudice occurred. *Baugh*, 64 F.4th at 782.

---

[4]Petitioners argue that they can challenge a conviction based on a general verdict "if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam). Under that premise, they argue that the "general verdict theory" requires that we vacate their Count Seven convictions. (21-1779 Appellant Br. at 19; 21-1768 Appellant Br. at 30–31.) By doing so, they fail to recognize that "the flaw in the instructions" must have "had substantial and injurious effect or influence in determining the jury's verdict." *Hedgpeth*, 555 U.S. at 58 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also United States v. Williams*, 441 F.3d 716, 724 (9th Cir. 2006) (reasoning that even if the "jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . , the verdict stands if the evidence is sufficient with respect to any one of the acts charged" (citation omitted)). And the jury-instruction error here is not a "structural" error—that is, an error "subject to automatic reversal." *Neder v. United States*, 527 U.S. 1, 8 (1999) (recognizing that those types of errors occur "only in a 'very limited class of cases'" (citation omitted)). Our Circuit instead applies a harmless-error analysis to determine whether the conduct underlying any valid and invalid predicates was "inextricably intertwined." *Baugh*, 64 F.4th at 782.

[5]Not only do Petitioners fight the application of *Brecht*'s harmless-error analysis, but they also cite *Baugh*'s dissent and argue that the "inextricably intertwined" test conflicts with *Brecht*. In any event, the law of our Circuit requires that we use the harmless-error approach and the "inextricably intertwined" test in § 2255 cases of this posture. *Baugh*, 64 F.4th at 781–82; *see Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) ("[T]his circuit follows the rule that the holding of a published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court.").

In other words, the error (of instructing the jury that an invalid predicate could support a § 924(c) conviction) would be "harmless because there is no reason to fear that the jury convicted the defendant of possessing a gun in furtherance of the invalid predicate but not the valid one." *Id.*; *see also Granda v. United States*, 990 F.3d 1272, 1291 (11th Cir. 2021) ("The tightly bound factual relationship of the predicate offenses precludes [a defendant] from showing a substantial likelihood that the jury relied solely on [an invalid count] to predicate its conviction[.]"), *cert. denied*, 142 S. Ct. 1233 (2022).[6]

Errors, however, might not be harmless when "the invalid predicate offense encompassed conduct beyond the scope of the valid predicate offense." *Baugh*, 64 F.4th at 783. That's because, in such a situation, the jury might have "convicted the defendant of possessing a gun in furtherance of [only] the invalid predicate." *Id.* at 782. With that in mind, we turn to see what conduct underlaid the invalid predicate (Count Six) and the valid predicate (Count Five) here.

Petitioners argue that it is "impossible to tell" whether the jury unanimously relied on a valid predicate when making its general verdict. *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978). But looking at the record and convictions before us, we have "no reason to fear." *Baugh*, 64 F.4th. at 782. Petitioners' participation in the "VICAR conspiracy" predicate was inextricably intertwined with their participation in the "VICAR aiding-and-abetting assault with a dangerous weapon" predicate.

---

[6]At this point, some may wonder why we are using the "inextricably intertwined" analysis in this situation, where the defendants are actually convicted of VICAR aiding-and-abetting assault with a dangerous weapon—a crime where someone ultimately possessed a weapon. True, we know that a crime of violence has been committed. But what we arguably don't know is the other element under § 924(c) that the jury had to find: That *Petitioners* used or carried a firearm during and in relation to that *specific* crime of violence. 18 U.S.C. § 924(c)(1)(A).

So what Petitioners contend is that a hypothetical juror could have found that someone, not Petitioners, possessed a weapon in connection with Count Five's aiding-and-abetting assault. That would not absolve Petitioners of the underlying liability for Count Five. But it would mean that they couldn't be guilty of § 924(c)(1)(A) because the hypothetical juror would not have thought that Petitioners used or carried weapons. Instead, that juror would then have had to have found that Petitioners did use or carry firearms in connection with Count Six's conspiracy only. So under Petitioners' logic, that juror, if he had known that the conspiracy could not have been a § 924(c) predicate, would not have convicted Petitioners on the § 924(c) count.

But that's why, as unlikely as this scenario seems in this case, we ask whether the conduct underlying the valid and invalid offenses is "inextricably intertwined." *Baugh*, 64 F.4th at 782. If it is, we have "no reason to fear that the jury convicted the defendant of possessing a gun in furtherance of the invalid predicate but not the valid one." *Id.*

Both counts arose from the same scheme, involving the use or carrying of a firearm during and in relation to those two predicates.  As the indictment and jury instructions specified, Count Five and Count Six both pertained to the assault on rival gang member Leon McGee "[o]n or about September 8-9." (R. 201, Indictment, p. 23–24; *see also* R. 467, Jury Instructions, PageID 5796, p. 67–68, 71.)  Count Six alleged that Petitioners conspired to assault McGee's gang while using a dangerous weapon.  And Count Five alleged the completion of that conspiracy—an assault on McGee.  Given that each count arose from the same common facts underlying the same assault, Petitioners' "participation in the conspiracy" to assault McGee's gang "was inextricably intertwined with [their] participation" in following through with that assault on McGee.  *Baugh*, 64 F.4th at 783.  Thus, "any gun possession in furtherance of the conspiracy" to assault McGee's rival gang (the invalid Count Six predicate) "was necessarily also in furtherance of" aiding and abetting the shooting of McGee (the valid Count Five predicate). *Id*.

As a result, the error here did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 782 (citation omitted).  Said otherwise, Petitioners have not shown that their VICAR conspiracy conviction "encompassed conduct beyond the scope of" their VICAR aiding-and-abetting assault with a dangerous weapon. *Id.* at 783.  So the error didn't "substantially influence[] the jury's decision." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  And we don't have "grave doubt" about the error's harmlessness. *Dimora v. United States*, 973 F.3d 496, 505 (6th Cir. 2020) (citation omitted).  For these reasons, Petitioners are not entitled to vacatur on Count Seven.

Petitioners make a series of arguments—none of which move the needle.  First, in reviewing the jury-instruction error, Petitioners argue that we should use a "modified categorical" approach when looking at Counts Five and Six instead of a "harmless error" approach.**7**  Under that approach, courts interpret the "*least* serious conduct" in a statute's

---

**7**Under the categorical approach, we interpret a statute to figure out which of the alternative elements listed served as the basis for a defendant's conviction. *See Mathis*, 579 U.S. at 504–05. And when a statute's provisions "have a more complicated . . . structure" with "divisible" elements, we use a modified approach—looking to a specific set of documents (called *Shepard* documents) to help determine under which element a defendant was convicted. *See id.* at 505–06. "[T]he purpose of the modified categorical approach is simply to determine of what

elements to see if a conviction qualifies as a crime of violence. *Borden v. United States*, 141 S. Ct. 1817, 1832 (2021). And so, analogizing to how we interpret a statute, Petitioners want us to apply the modified categorical approach when analyzing the jury-instruction error so that we take Count Six—the invalid predicate and "*least* serious conduct" criminalized by the jury instructions on Count Seven—as the basis for their § 924(c) conviction.[8] *Id.*

But applying the modified categorical approach to a jury-instruction error would be inappropriate. "The purpose of the categorical (and modified categorical) approach" in a case like this one is to determine "whether a particular predicate meets the requirements of a 'crime of violence.'" *United States v. Ali*, 991 F.3d 561, 574 (4th Cir.), *cert. denied*, 142 S. Ct. 486 (2021); *see also United States v. Said*, 26 F.4th 653, 661 n.13 (4th Cir. 2022). Importantly, "the modified approach serves a *limited* function: It helps effectuate the categorical analysis [on] a divisible *statute*" by allowing the court to look at *Shepard* documents for context. *Descamps v. United States*, 570 U.S. 254, 260 (2013) (emphases added). So the approach deals with how to look at elements in *statutes*. *See Davis*, 751 F.3d at 777. It does not govern how we deal with a *jury-instruction error* on collateral review under § 2255. That issue we review for harmless error. *See Baugh*, 64 F.4th at 782–83.[9]

Indeed, we don't need to apply a modified categorical approach to assess the jury-instruction error because we have already used it for its proper purpose: determining what crime qualifies as a crime of violence (Count Five) and what crime does not (Count Six). *See supra* Part III.A.1–2. And with that done, we have no further need to "employ the categorical approach [or the modified categorical approach] because each offense has already been categorized appropriately." *United States v. Reed*, 48 F.4th 1082, 1089 (9th Cir. 2022), *cert. denied*, 143 S.

---

elements the defendant was convicted so that the court can apply the categorical approach." *United States v. Davis*, 751 F.3d 769, 777 (6th Cir. 2014).

[8]*Baugh* did not address whether the modified categorical approach could be used as an alternative to the "inextricably intertwined" test. We explain why it can't.

[9]We note that even within the core context where it's used, the categorical approach has been subject to increasing criticism. *See United States v. Burris*, 912 F.3d 386, 407 (6th Cir. 2019) (en banc) (Thapar, J., concurring) (collecting cases with separate writings on the categorical approach).

Ct. 1044 (2023); *see Stone v. United States*, 37 F.4th 825, 829–31 (2d Cir.), *cert. denied*, 143 S. Ct. 396 (2022).

Instead, after determining the "crime of violence" issue, all that was left to do was turn to the next issue:  review the record and jury instructions for harmless error.[10]  *See Baugh*, 64 F.4th at 782–83.  And Petitioners cite no authority that justifies extending the categorical approach to a "jury-instruction error" context.  So, for the reasons we've explained, the modified categorical approach has no application here.

Petitioners' next argument is that *Baugh*'s approach does not bind us in this case because the valid predicate in *Baugh* was a drug-trafficking crime—not a crime of violence as here.  *See id.* at 783 (involving a cocaine conspiracy).  They reason that the difference matters because a crime of violence and a drug-trafficking crime are distinct types of predicates.

But this is a distinction without a difference.  That's because both a "crime of violence" and a "drug trafficking crime" serve as valid predicates under § 924(c).  *See* 18 U.S.C. § 924(c)(1)(A) (criminalizing the use or carrying of a firearm "during and in relation to any crime of violence *or* drug trafficking crime" (emphasis added)).  And as long as we have one valid predicate, *Baugh*'s approach applies.  64 F.4th at 781–82 (focusing more generally on whether we can afford 28 U.S.C. § 2255 relief for "a conviction under a general verdict that may have rested on an unlawful ground").  So just as with the valid drug-trafficking predicate in *Baugh*, the valid crime-of-violence predicate here satisfies § 924(c)'s elements.

Petitioners also argue that *Baugh*'s framework should not apply because the *Brecht* harmless-error approach raises Sixth Amendment concerns, such as judicial "factfinding" and "guesswork" on the sufficiency of the evidence supporting Petitioners' convictions.  (21-1768 Appellant Br. at 30, 33).  Not so.  *Brecht*'s harmless-error approach applies to situations (as here)

---

[10]So in this light, the approaches here—categorical or modified categorical on the one hand and harmless error on the other—answer different questions, one after the other.  The "categorical approach" determines whether a federal felony—for us, VICAR aiding-and-abetting assault with a dangerous weapon—"may serve as a predicate for a conviction and sentence under the elements clause." *Taylor*, 142 S. Ct. at 2020; *see Manners*, 947 F.3d at 380–82.  We did exactly that.  And only after determining that Count Five served as a valid predicate for Count Seven did we turn to the next, separate inquiry:  whether a jury-instruction error with one invalid and one valid predicate offense was harmless.  *See Baugh*, 64 F.4th at 782–83.  Applied in that way, the two approaches work in tandem as two distinct steps in our analysis.

where a criminal defendant challenges instructional errors on collateral review. *See Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) ("An instructional error arising in the context of multiple theories of guilt no more vitiates *all* the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted."); *Baugh*, 64 F.4th at 782 n.1.

And *Baugh* already addressed Petitioners' Sixth Amendment concerns. It noted that the harmless-error analysis "necessarily consists in drawing inferences from the record about what the jury concluded." *Baugh*, 64 F.4th at 782 n.2. In reviewing a claim, we don't determine whether "sufficient evidence supports the conviction." *Id.* Rather, we determine whether "the record affords no basis for the jury to distinguish between gun possession in furtherance of a valid and an invalid predicate offense." *Id.* And we will find an "error [] harmless [if] it did not affect the jury's verdict." *Id.*

So rather than engaging in judicial fact-finding, applying harmless-error review here merely requires us to assess the conduct underlying the predicate crimes of which Petitioners were already convicted by a unanimous jury. On top of that, the "inextricably intertwined" test for finding harmless error alleviates concerns about the certainty of Petitioners' § 924(c) convictions. *Id.* at 782 ("[W]here the conduct underlying the valid predicate offense was 'inextricably intertwined' with the conduct underlying the invalid predicate offense, the [] violation [is] harmless because there is no reason to fear that the jury convicted the defendant of possessing a gun in furtherance of the invalid predicate but not the valid one.").

**IV.**

For these reasons, we affirm.