RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

AL DORSEY,

*Defendant-Appellant*.

No. 23-5082

─────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:21-cr-00077-1—Charles Edward Atchley, Jr., District Judge.

Decided and Filed: January 23, 2024

Before: McKEAGUE, LARSEN, and MURPHY, Circuit Judges.

─────────────

**COUNSEL**

**ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

─────────────

**OPINION**

─────────────

MURPHY, Circuit Judge. The U.S. Sentencing Guidelines repeatedly instruct district courts to increase a defendant's sentence if the defendant has one or more prior convictions for a "crime of violence." *See, e.g.*, U.S.S.G. §§ 2K2.1; 4B1.1. They define "crime of violence" to mean, as relevant here, an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id.* § 4B1.2(a). In *United States v. Gloss*,

661 F.3d 317 (6th Cir. 2011), we interpreted language identical to this so-called "elements clause" to cover the Tennessee crime of facilitating aggravated robbery. *Id.* at 318–20.

Viewing itself bound by *Gloss*, the district court in this case treated Al Dorsey's prior convictions for facilitating aggravated robbery as "crimes of violence." Dorsey now offers two reasons why we need not follow *Gloss*. He first asserts that *Gloss* conflicts with an earlier decision holding that facilitation offenses (unlike aiding-and-abetting offenses) do not require defendants to harbor an intent to commit the crime that their conduct facilitated. *See United States v. Vanhook*, 640 F.3d 706, 713–14 (6th Cir. 2011). He next asserts that *Gloss* conflicts with a later Supreme Court decision holding that the elements clause does not reach reckless uses of force. *See Borden v. United States*, 593 U.S. 420, 429 (2021) (plurality opinion); *id.* at 445–46 (Thomas, J., concurring in the judgment). Dorsey is wrong on both counts. Because we must follow *Gloss*, we affirm.

I

After midnight on January 1, 2021, Dorsey brought in the new year with a group of friends in Chattanooga, Tennessee. The group decided to shoot guns into the air as part of their celebration. Nearby livestream cameras recorded this dangerous activity. Chattanooga police who were monitoring the cameras from an intelligence center dispatched officers to the scene. The officers found shell casings on the ground near the group. They detained Dorsey and discovered a pistol on him. Their later review of the video confirmed that Dorsey had fired some of the shots.

Dorsey's prior felony convictions meant that he could not possess the pistol. The federal government thus charged him with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He pleaded guilty.

When determining Dorsey's guidelines range, a probation officer calculated his base offense level as 24 because he had at least two prior convictions for a "crime of violence." U.S.S.G. § 2K2.1(a)(2). Specifically, Dorsey had two prior Tennessee convictions for facilitating aggravated robbery and one prior Tennessee conviction for robbery. In addition, the probation officer relied on these prior crimes of violence to add a point to Dorsey's criminal

history score. *See id.* § 4A1.1(d) (previously codified under subsection (e)). These calculations produced a guidelines range of 84 to 105 months' imprisonment.

At sentencing, Dorsey objected to the probation officer's decision to treat his two facilitation offenses as "crimes of violence." If these offenses did not qualify, he argued, his guidelines range would fall to 46 to 57 months' imprisonment. The district court disagreed. Our prior decision in *Gloss*, the court reasoned, required it to treat Dorsey's Tennessee convictions for facilitating aggravated robbery as crimes of violence. That said, the court noted that it would "welcome" additional guidance from us on this topic. Sent. Tr., R.56, PageID 418. Ultimately, it varied below Dorsey's guidelines range by imposing a 72-month sentence.

Dorsey appeals the decision to treat his two facilitation offenses as "crimes of violence." We review the decision de novo. *See United States v. Hawkins*, 554 F.3d 615, 616 (6th Cir. 2009).

II

The applicable guideline defines "crime of violence" in part as follows: "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a); *see id.* § 2K2.1 cmt. n.1. Some other statutes—including, most notably, the Armed Career Criminal Act (or "ACCA" for short)—contain an identically worded "elements clause." *See* 18 U.S.C. § 924(e)(2)(B)(i). And courts often rely on caselaw that interprets the ACCA's elements clause when deciding which offenses qualify as "crimes of violence" under the Sentencing Guidelines (or other similarly worded laws). *See United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc); *see also United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022).

To decide whether an offense falls within the "elements clause" under this caselaw, courts apply the ubiquitous "categorical approach." *United States v. Taylor*, 596 U.S. 845, 850 (2022). This approach turns on an offense's general elements, not a defendant's specific conduct. *See id.* Put another way, a criminal law "has as an element the use, attempted use, or threatened use of physical force against the person of another" only if *every* set of facts that

could violate the law would include the use, attempted use, or threatened use of that force.  *See Nicholson v. United States*, 78 F.4th 870, 877 (6th Cir. 2023).  So we need not consider how Dorsey committed his two facilitation offenses in this case.  *See Taylor*, 596 U.S. at 850.  Rather, we must ask whether the least violent way that a defendant could commit this offense would include the required force.  *See id.*  If not, the offense does not qualify as a "crime of violence" under this clause.  *See id.*

We thus start with the elements of Dorsey's two facilitation offenses.  Tennessee law defines the generic crime of "facilitation" as follows: "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [a separate aiding-and-abetting statute], the person knowingly furnishes substantial assistance in the commission of the felony."  Tenn. Code Ann. § 39-11-403(a).  As this language suggests, a facilitator has less culpability than an aider and abettor under Tennessee law.  The facilitator must only *know* that the primary culprit intends to commit the underlying crime; the aider and abettor must *intend* for that culprit to commit the crime.  *See United States v. Woodruff*, 735 F.3d 445, 450 (6th Cir. 2013); *Gloss*, 661 F.3d at 318.

The crime of aggravated robbery undergirded Dorsey's two facilitation offenses.  Tennessee defines an ordinary robbery as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear."  Tenn. Code Ann. § 39-13-401(a).  The robbery becomes "aggravated" when *either* the defendant commits this crime "with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon" *or* "the victim suffers serious bodily injury."  *Id.* § 39-13-402(a)(1)–(2).

In *Gloss*, we held that the mix of statutory elements across the facilitation and aggravated-robbery statutes satisfied the elements clause's requirements.  661 F.3d at 318–20.  Breaking this facilitation offense down into its component parts, *Gloss* began by examining the underlying crime of aggravated robbery (a robbery that uses a "real or disguised deadly weapon" or that results in a "serious bodily injury").  *Id.* at 319.  We reasoned that this crime falls within the elements clause because it will always entail "the use, attempted use, or threatened use of physical force against the person of another."  *Id.* (citation omitted).  Indeed, we have also held that an ordinary robbery in Tennessee falls within the clause.  *See United States v. Hubbard*,

2023 WL 319604, at *2–3 (6th Cir. Jan. 19, 2023); *United States v. Belcher*, 40 F.4th 430, 431–32 (6th Cir. 2022). A robber who knowingly uses "violence" or knowingly puts a victim in "fear" of violence necessarily "use[s]" "physical force against" the victim or at least "threaten[s]" the use of that force within the meaning of the crime-of-violence definition. Tenn. Code Ann. § 39-13-401(a); U.S.S.G. § 4B1.2(a); *Belcher*, 40 F.4th at 431; *see also Stokeling v. United States*, 139 S. Ct. 544, 554–55 (2019).

The question then becomes whether a conviction for *facilitation* of aggravated robbery always will involve the "use" or "threatened use" of force within the meaning of the elements clause. *Gloss* answered yes. To begin with, a facilitation offense always requires the prosecution to prove that an aggravated robbery (that is, a crime of violence) has occurred. *See Gloss*, 661 F.3d at 319. This fact distinguishes facilitation from "inchoate" offenses like attempt or solicitation because one can commit those offenses without completing the underlying crime. *See, e.g.*, *Taylor*, 596 U.S. at 850–51; *United States v. Benton*, 639 F.3d 723, 731 (6th Cir. 2011). In contrast, a defendant does not "facilitate" a crime unless the primary culprit successfully completes it. *See, e.g.*, *State v. Kiser*, 2019 WL 2402962, at *11 (Tenn. Crim. App. June 6, 2019); *State v. Dych*, 227 S.W.3d 21, 40 (Tenn. Crim. App. 2006). *Gloss* held that this proof—that "*someone*" used or threatened to use force and that the defendant "knowingly provided substantial assistance to that person"—satisfied the elements clause. 661 F.3d at 318–19.

One can read *Gloss* broadly or narrowly. Broadly, one might read *Gloss* as holding that the robber (the main culprit) needs to be the only person who knowingly engages in the "use" or "threatened use" of force. So even if a facilitating defendant were convicted under a hypothetical statute penalizing those who recklessly (not knowingly) assist in a robbery, the facilitation offense might still satisfy the elements clause. That clause requires only that a crime have "as an element the use, attempted use, or threatened use" of the required force. U.S.S.G. § 4B1.2(a)(1). This text need not be interpreted to require defendants *themselves* to knowingly use or threaten force as long as "*someone*" does so. *Gloss*, 661 F.3d at 319. Narrowly, one might read *Gloss* as attributing the robber's "use" or "threatened use" of force to the facilitator. After all, *Gloss* also noted that Tennessee's facilitation offense requires the facilitator to *know* that the robber "intended" to commit the robbery and to "*knowingly*" give "substantial

assistance" to that crime. *Id.* at 318–19 (emphasis added). And just as an armed assailant who shoots a victim knowingly uses the "force it takes for the bullet to injure the victim's body," *see Harrison*, 54 F.4th at 889, one might say that the facilitator knowingly uses the force (or threatened force) that the robber wields (or threatens to wield), *see Gloss*, 661 F.3d at 319.

We need not choose between these readings. Either way, the district court correctly held that *Gloss* required it to treat Dorsey's facilitation convictions as crimes of violence. True, *Gloss* was interpreting the ACCA's identical elements clause when it held that facilitating aggravated robbery satisfied the clause. *See id.* at 318 (citing 18 U.S.C. § 924(e)(2)(B)(i)). But Dorsey makes no attempt to distinguish *Gloss* on this (or any other) ground. He instead offers two theories why *Gloss* was wrongly decided and does not bind us. Neither theory has merit.

*Theory One*: Dorsey argues that *Gloss* conflicts with our months-earlier decision in *Vanhook*. When finding that a facilitation offense fell outside the definition of "violent felony" in the ACCA, *Vanhook* rested on the fact that facilitation does not require an *intent* to commit the crime that the defendant facilitated (here, aggravated robbery). *See Vanhook*, 640 F.3d at 713–15; *see also Woodruff*, 735 F.3d at 449–50. And because a later panel cannot adopt a legal rule that conflicts with an earlier published decision, Dorsey claims, we must ignore *Gloss* and follow *Vanhook*. *See, e.g.*, *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 241 (6th Cir. 2005).

The conflict that he perceives is an illusion. *Vanhook* held that facilitating the *burglary of a building* did not qualify as a "violent felony" under the ACCA. *See* 640 F.3d at 708. But the case did not even interpret the elements clause because the parties agreed that burglary of a building did not require the use (or attempted or threatened use) of force. *Id.* at 710. Rather, *Vanhook* concerned the ACCA's "residual clause," a separate provision that the Supreme Court has since found void for vagueness. *Id.*; *see Johnson v. United States*, 576 U.S. 591, 593–606 (2015). That clause treated as a "violent felony" any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(2)(B)(ii). For years, the Supreme Court had struggled to interpret the residual clause's language. *See Johnson*, 576 U.S. at 598–602. Near the time of *Vanhook*, the Court had suggested that the clause covered only offenses that were "purposeful, violent, and aggressive." *Vanhook*, 640 F.3d at 712 (quoting *Begay v. United States*, 553 U.S. 137, 144–45 (2008)).

*Vanhook* concluded that Tennessee's facilitation statute criminalized behavior that was not "sufficiently purposeful" to satisfy the residual clause. *Id.* at 713. We reasoned that the facilitation offense covered only defendants who *knowingly* assist the primary perpetrator. *Id.* at 713–14. Defendants who *purposefully* assisted would qualify as aiders and abettors subject to harsher punishments. *Id.*

*Vanhook*'s logic does not reach the elements clause. Unlike the text of the (now-invalid) residual clause, the text of the elements clause cannot be read to cover only offenses undertaken purposefully. *See United States v. Farrow*, 574 F. App'x 723, 733 (6th Cir. 2014); *United States v. Elliott*, 757 F.3d 492, 496 (6th Cir. 2014). That is, even if a criminal offense does not require a defendant to intend a harmful result, the offense can still have "as an element the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1). Consider an example from the Supreme Court. A "getaway driver" who *knowingly* runs over a pedestrian along the escape path uses the car's "force" against the victim even if the driver would have preferred a "clear road" and so did not *purposely* run over the pedestrian. *Borden*, 593 U.S. at 432 (plurality opinion). And here, the facilitation offense requires a facilitator to *know* that the aggravated robber will use or threaten force against the victim. *Gloss*, 661 F.3d at 318–19.

Dorsey's reliance on *Woodruff* fares no better. *Woodruff* asked whether a Tennessee conviction for facilitating a cocaine sale qualified as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). 735 F.3d at 448–51. That guideline defines the phrase "controlled substance offense" in relevant part to cover any offense that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense[.]" U.S.S.G. § 4B1.2(b)(1). At the time of *Woodruff*, the guideline's commentary also suggested that the phrase covered "the offenses of aiding and abetting, conspiring, and attempting to commit" those drug offenses. *Id.* § 4B1.2 cmt. n.1 (2013). *Woodruff* held that the district court had wrongly treated facilitation of the sale of cocaine as a controlled substance offense but that this error was not "plain" for purposes of plain-error review. 735 F.3d at 448–51. In doing so, we did not expressly consider whether an offense that bars the knowing facilitation of a cocaine sale

qualified as an offense that "prohibits the . . . distribution" of cocaine under the guideline's *text*. U.S.S.G. § 4B1.2(b). Rather, we jumped to the guideline's *commentary*, explaining that facilitation does not require defendants to intend for a drug sale to occur (unlike aiding-and-abetting, conspiracy, and attempt offenses). 735 F.3d at 449–50. Because facilitation required only knowing conduct, we held that it was not "substantially equivalent to" these other crimes. *Id.* at 450.

Yet much has happened since *Woodruff*. Sitting en banc, we held that § 4B1.2(b)'s commentary (the commentary on which *Woodruff* relied) unlawfully enlarged the guideline's scope by including "attempt" crimes within the meaning of "controlled substance offense." *United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019) (en banc). And the Sentencing Commission responded to *Havis* by adding language to the guideline similar to the commentary's prior text. Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28,254, 28,275–76 (May 3, 2023). The guideline itself now covers "the offenses of aiding and abetting, attempting to commit, or conspiring to commit" any controlled substance offense or crime of violence. U.S.S.G. § 4B1.2(d).

All of this said, this case does not require us to consider how these changes affect *Woodruff* (if at all). That case does Dorsey no good even if it has continued vitality. If we assume that *Woodruff* remains good law, we can assume that *facilitating* the distribution of drugs does not count as *distributing* drugs under § 4B1.2(b). And we can assume that *facilitating* the distribution of drugs does not count as *aiding and abetting* that distribution under the newly minted § 4B1.2(d). *See Woodruff*, 735 F.3d at 449–50. Still, *Woodruff* and these assumptions say nothing about whether the distinct crime of facilitating an aggravated robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" U.S.S.G. § 4B1.2(a)(1). *Woodruff* thus does not conflict with *Gloss*'s holding that it does. *Gloss*, 661 F.3d at 319; *see Farrow*, 574 F. App'x at 733.

*Theory Two*: Even if *Gloss* does not conflict with our own precedent, Dorsey next argues, it at least conflicts with the Supreme Court's later decision in *Borden*. He is again mistaken. *Borden* held that the ACCA's elements clause does not cover offenses that require only a "reckless" state of mind. 593 U.S. at 423 (plurality opinion); *id.* at 445–46 (Thomas, J.,

concurring in the judgment). The plurality in *Borden* reasoned that defendants have not used force "against" a victim unless the victim was the "conscious object" of that force. *Id.* at 430–31 (plurality opinion). But when a defendant's reckless act harms a victim, the defendant has not consciously directed the force against the victim. *Id.* at 427. Rather, the defendant has only "consciously disregard[ed]" the risk that the force might reach the victim. *Id.* (quoting Model Penal Code § 2.02(2)(c) (Am. L. Inst. 1985)); *see id.* at 432; *id.* at 445–46 (Thomas, J., concurring in the judgment).

This holding does not affect *Gloss*'s conclusion that facilitating aggravated robbery satisfies the elements clause. To begin with, *Borden*'s plurality opinion expressly disclaimed that it was addressing "accessory liability" crimes like Tennessee's facilitation offense. *Id.* at 426 n.3 (plurality opinion). Regardless, to convict a defendant of facilitation, the prosecution must prove more than that the defendant acted recklessly. A facilitator of aggravated robbery must knowingly assist the robber while also knowing of the robber's plan to commit the crime (and thus of the planned use or threatened use of force). *Gloss*, 661 F.3d at 318. So facilitation requires the defendant to harbor a *knowing* state of mind, not just a *reckless* one. And the *Borden* plurality made clear that the elements clause covers "knowing acts" in addition to "purposeful" ones. 593 U.S. at 432 (plurality opinion). Indeed, we have since held that the elements clause reaches crimes committed wantonly—a state of mind less than knowing but more than reckless. *See Harrison*, 54 F.4th at 890. In short, Dorsey's facilitation offenses required proof of his knowledge. An offense with that state of mind still meets the elements clause after *Borden*.

That leaves Dorsey's reliance on a recent remand order. *See United States v. Page*, 2022 U.S. App. LEXIS 2476, at *3 (6th Cir. Jan. 26, 2022) (order). There, the government successfully obtained a remand for the district court to consider whether facilitation of felony murder in Tennessee satisfied the elements clause after *Borden*. *See id.* at *2–3. Yet felony murder only requires a "killing" to have occurred during the course of one of several crimes, including "burglary," "theft," or "aggravated child neglect[.]" Tenn. Code Ann. § 39-13-202(a)(2). The current version of this statute holds the defendant "strictly" liable for such a killing. *State v. Kimbrough*, 924 S.W.2d 888, 890 & n.2 (Tenn. 1996). The state courts have

thus held that defendants can facilitate felony murder even if they lack knowledge of the murder. *State v. Lewis*, 919 S.W.2d 62, 68 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Williams*, 977 S.W.2d 101 (Tenn. 1998). Defendants need only know of (and assist in) the felony that led to the death, and the list of qualifying felonies do not all require the use (or threatened use) of force. *See State v. Robinson*, 2023 WL 2669906, at \*12–13 (Tenn. Crim. App. Mar. 29, 2023); *see also State v. Ely*, 48 S.W.3d 710, 719–20 (Tenn. 2001). *Gloss* and this case, by comparison, concern facilitation of aggravated robbery—not felony murder. So our remand order in *Page* in no way calls *Gloss* into doubt or raises any concerns about the proper outcome of this case.

We affirm.