RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TARRENCE PARHAM, aka Terrance Sullivan,

*Defendant-Appellant*.

No. 24-5025

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:21-cr-20181-1—Sheryl H. Lipman, District Judge.

Decided and Filed:  October 17, 2024

Before:  GILMAN, GRIFFIN, and MATHIS, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Brian Daniel Mounce, Unam Peter Oh, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant.  Naya Bedini, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

_____

### OPINION

_____

GRIFFIN, Circuit Judge.

Defendant Tarrence Parham pleaded guilty to being a felon in possession of a firearm. During sentencing, the district court concluded that Parham's prior Tennessee conviction for attempted second-degree murder constituted a crime of violence under the Sentencing Guidelines and thus increased his base offense level.  Parham challenges that conclusion on appeal, as well as the district court's refusal to dismiss the indictment on Second Amendment grounds.

Because the elements of attempted second-degree murder in Tennessee categorically match the Guidelines' definition of a "crime of violence," and because binding precedent forecloses his Second Amendment argument, we affirm.

I.

Parham is no stranger to crime. His lengthy criminal record includes multiple felony convictions under Tennessee law for theft, attempted aggravated burglary, reckless homicide, attempted second-degree murder, and reckless aggravated assault. Most serious—and critical to this appeal—is Parham's attempted second-degree murder conviction. During an argument, Parham fired several shots at a man. Although he missed the intended target, his bullets hit an eight-year-old child playing on a playground. Parham fled the scene and eventually admitted to the shooting.

Only six months after Parham was released from prison for that offense, law enforcement officers apprehended him for driving a stolen car. There, officers found a stolen gun loaded with ammunition in his waistband.

Based on these events, a federal grand jury indicted Parham on one count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). Parham moved to dismiss the indictment pursuant to *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022), arguing that § 922(g)(1) is facially, and as applied to him, unconstitutional. Following a hearing, the district court denied Parham's motion. He then pleaded guilty to the single-count indictment.

The Probation Office prepared a presentence investigation report. It determined that Parham's base offense level was 22 because the firearm at issue was capable of accepting a large magazine and because the Probation Office believed that Parham's previous conviction for attempted second-degree murder constitutes a "crime of violence" under the Guidelines. *See* U.S.S.G. §§ 2K2.1(a)(3) & cmt. n.1, 4B1.2(a). He objected to this base offense level, arguing that this conviction did not constitute a "crime of violence," as defined by U.S.S.G. § 4B1.2(a), because attempt crimes under Tennessee law are broader than the Guidelines' definition of a crime of violence. Following an unpublished opinion from this court rejecting Parham's exact argument, the district court overruled Parham's objection and sentenced him to 108 months'

imprisonment. *See United States v. Martin*, 2023 WL 2755656, at \*5–7 (6th Cir. Apr. 3, 2023). Parham timely appealed.

II.

We begin with the district court's calculation of Parham's base offense level. Although not bound by *Martin*, we find it persuasive and hold that application of the categorical approach establishes that second-degree murder in Tennessee is indeed a crime of violence under the Guidelines.

A.

We review de novo a district court's determination that a previous conviction under state law constitutes a "crime of violence" under the Guidelines. *United States v. Hawkins*, 554 F.3d 615, 616 (6th Cir. 2009). When making this determination, we use the well-worn categorical approach. *United States v. Dorsey*, 91 F.4th 453, 456 (6th Cir. 2024); *see also United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc). Under this analysis, we ignore the facts of the instant case and focus solely on whether the elements of the prior conviction sufficiently match the relevant Guidelines definition.[1] *See Mathis v. United States*, 579 U.S. 500, 504 (2016). If the "least culpable" conduct criminalized under the state statute falls within the Guidelines' definition of "crime of violence," then the state statute and the Guidelines are categorical matches, meaning that the state offense is a "crime of violence." *See United States v. Havis*, 927 F.3d 382, 385 (6th Cir. 2019) (en banc) (per curiam); *Dorsey*, 91 F.4th at 456 (noting that we look to the "least violent way" the defendant could commit the predicate offense, "not [the] defendant's specific conduct"). "But if the least culpable conduct falls outside [the Guidelines'] definition, then the statute is too broad to qualify," meaning the state offense does not constitute a crime of violence. *Havis*, 927 F.3d at 385; *see also Borden v. United States*, 593 U.S. 420, 424 (2021) (plurality opinion). When comparing the state statute to the Guidelines, we look to the underlying statute and definition that were effective at the time of the conviction. *Cf. Brown v. United States*, 602 U.S. 101, 123 (2024) (holding that, under the categorical

---

[1]The parties agree that only the elements clause, as opposed to the enumerated-offenses clause, § 4B1.1(a)(2), of the Guidelines' definition of crime of violence is relevant here.

approach, courts must analyze the federal drug schedules "at the time of the [underlying state] offense").

When the statute forming the basis for the predicate offense is "divisible"—i.e., it "sets out one or more elements of the offense in the alternative," *Descamps v. United States*, 570 U.S. 254, 267 (2013)—we must apply the "modified categorical approach," *Mathis*, 579 U.S. at 505. In such cases, we consult the "*Shepard* documents," *Burris*, 912 F.3d at 393 (quoting *Mathis*, 579 U.S. at 505), "to determine which alternative formed the basis of the defendant's prior conviction," *Descamps*, 570 U.S. at 257. These documents can include "the indictment, jury instructions, or plea agreement and colloquy." *Burris*, 912 F.3d at 393 (quoting *Mathis*, 579 U.S. at 505). "Once the federal sentencing court has determined under which alternative set of elements the defendant was convicted, it may then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case)" with the relevant federal definition. *Id.* at 393 (internal quotation marks omitted).

B.

Our first step in the categorical approach is to consult the relevant federal definition. At the time of Parham's state conviction, the Guidelines' elements clause defined the term "crime of violence" the same way it does today: "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (2008); *see also* U.S.S.G. § 2K1.2 cmt. n.1 (explaining that a "crime of violence" under this Guideline is defined in § 4B1.2). Because the Guidelines' definition mirrors the definition of "crime of violence" under the Armed Career Criminal Act (ACCA), we interpret them "the same way," *United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017), and "may rely on ACCA cases in our analysis," *Martin*, 2023 WL 2755656, at *2.

We first consider what "physical force" means in the context of a violent crime: it "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). When interpreting this definition, we have said that "[a] defendant uses physical force whenever his volitional act sets into motion

a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.'" *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) (citation omitted), *abrogated on other grounds*, *Borden*, 593 U.S. at 420. Because physical force can come from any concrete body, *Johnson*, 559 U.S. at 138, we have opined that acts such as perpetrating a sarin gas attack, pulling the trigger of a gun, or placing poison in someone's drink involve using physical force, despite the absence of any direct physical contact from the perpetrator to the victim, *Verwiebe*, 874 F.3d at 261.

Next take the terms "use of," "attempted use of," and "threatened use of" in order from most to least culpable. "Use of . . . denotes volitional conduct." *Borden*, 593 U.S. at 431. In the context of using force, it means the actual "act of employing" force and accomplishing such an act. *See Verwiebe*, 874 F.3d at 262 (quoting *Voisine v. United States*, 579 U.S. 686, 692 (2016)); *see also Use*, Black's Law Dictionary (12th ed. 2024) ("To employ for the accomplishment of a purpose."). We give the term "attempted use of" its "ordinary meaning," *Johnson*, 559 U.S. at 138, which is "that the defendant took specific actions"—i.e., a "substantial step"—toward the use of force but did not achieve completion, *United States v. Taylor*, 596 U.S. 845, 851, 856 (2022); *Dorsey*, 91 F.4th at 457; *see also Attempt*, Black's Law Dictionary (12th ed. 2024) ("An overt act that is done with the intent to commit a crime but that falls short of completing the crime."). And "threatened use of" means "a communicated intent to inflict physical or other harm on any person or on property." *Taylor*, 596 U.S. at 854–55 (brackets and internal quotation marks omitted); *see also Threat*, Black's Law Dictionary (12th ed. 2024) ("A communicated intent to inflict harm or loss on another . . . . A person or thing that might well cause harm.").

C.

We next look at the elements of Parham's state conviction. At the time of the conviction, Tennessee defined second-degree murder as "a knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (2008).[2] And Tennessee's attempt statute, which is the same today as it was at

---

[2]That divisible statute criminalized another type of second-degree murder: unlawfully distributing illegal drugs that caused the death of the user. Tenn. Code Ann. § 39-13-210(a)(2) (2008); *see also Martin*, 2023 WL 2755656, at *2–4 (holding that § 39-13-210 is divisible). The parties agree that this definition is not at issue in our modified-categorical analysis here because Parham's underlying conviction was based on a shooting and not drug distribution.

the time of Parham's conviction, provides three bases for committing an attempt crime: (1) completing the intended conduct but such actions fail to meet all the elements of the offense; (2) completing the intended conduct but the intended result does not come to fruition; and (3) taking a substantial step—beyond mere preparation—toward the commission of the offense. Tenn. Code Ann. § 39-12-101(a)(1–3) (2008); *see also id.* at cmt. Tenn. Sent'g Comm'n (explaining the type of conduct that will constitute attempt under each subsection).

Because the record does not "make clear under which subsection" of the attempt statute Parham was convicted, we must "presume that the conviction rested upon nothing more than the least of the acts criminalized."[3] *Burris*, 912 F.3d at 406 (citation omitted). Parham contends, and the government does not contest, that subsection (a)(3)—taking a "substantial step toward the commission of the offense"—is the least culpable way to commit attempt in Tennessee. We agree.

In sum, the relevant portions of Tennessee's second-degree murder and attempt statutes establish that the elements of the least culpable form of attempted second-degree murder in Tennessee are: "(1) the defendant acted with the intent to unlawfully kill the alleged victim; and (2) the defendant's conduct constituted a substantial step toward killing the alleged victim." *State v. Mullican*, 1998 WL 117265, at *2–3 (Tenn. Crim. App. Mar. 17, 1998) (citing Tenn. Code Ann. §§ 39-13-210(a), 39-12-101); *see also State v. Vaughn*, 1999 WL 1531346, at *3 (Tenn. Crim. App. Dec. 27, 1999) (outlining and upholding the elements of attempted murder given in jury instructions). As explained below, Parham's categorical-approach argument rests on the substantial-step aspect of this crime.

A substantial step under Tennessee law requires something beyond "mere preparation." Tenn. Code Ann. § 39-12-101(a)(3) cmt. Tenn. Sent'g Comm'n. But given the "infinite variety of factual situations" that can constitute a substantial step, it is not something that courts can specifically define; it is instead determined on a case-by-case basis. *State v. Haymer*, 671 S.W.3d 568, 574 (Tenn. Crim. App. 2023) (quoting Tenn. Code Ann. § 39-12-101(a)(3) cmt.

---

[3]Although we have yet to determine whether this statute is divisible, the parties here agree that we need not make that determination given the lack of specificity from the *Shepard* documents regarding which subsection Parham was convicted under.

Tenn. Sent'g Comm'n).  Generally, the possession of materials to be used in the commission of the crime, near the scene of the attempted crime, where they can serve no lawful purpose, may be a substantial step if such action is strongly corroborative of the actor's overall criminal purpose. *State v. Reeves*, 916 S.W.2d 909, 914 (Tenn. 1996).

On this point, *Reeves* is instructive.  There, two middle-school girls conspired to kill their teacher by poisoning her coffee.  *Id.* at 910.  They informed two other classmates of their plan. *Id.*  One morning, the girls' teacher entered the classroom and saw the girls leaning over her desk.  *Id.*  When they were so observed, the girls giggled and ran back to their seats, leaving a purse containing the rat poison next to their teacher's coffee cup.  *Id.*  A jury convicted the girls of attempted second-degree murder.  *Id.*  On Reeves's appeal, the Tennessee Supreme Court upheld her conviction, finding that she took a "substantial step" toward committing second-degree murder when she and her friend possessed materials to commit the crime near the scene of the attempted crime.  *Id.* at 914.

### D.

With that background in mind, we must compare the relevant elements of the crime of conviction to the Guidelines' definition at issue.  *See Mathis*, 579 U.S. at 504.  Specifically, our inquiry is whether the least culpable conduct constituting attempted second-degree murder under Tennessee law *necessarily* includes as an element the use, attempted use, or threatened use of physical force against another person.  *See, e.g.*, *Burris*, 912 F.3d at 392 ("The question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*.").  "Put another way, a criminal law 'has as an element the use, attempted use, or threatened use of physical force against the person of another' only if *every* set of facts that could violate the law would include the use, attempted use, or threatened use of that force."  *Dorsey*, 91 F.4th at 456 (citation omitted).

Parham constrains his argument to the second element of attempted second-degree murder, asserting that taking a mere substantial step toward the offense does not necessarily include as an element the use, attempted use, or threatened use of physical force. He claims that, in light of *Taylor*, 596 U.S. at 851—where the Supreme Court held that attempted Hobbs Act robbery does not constitute a crime of violence under the ACCA—his attempt crime is also not a crime of violence under the Guidelines because taking a substantial step toward second-degree murder does not necessarily include the use, attempted use, or threatened use of physical force.

We disagree. A person's possession of materials capable of killing someone near the scene of the intended crime—for example, poison, like in *Reeves*—along with conduct that makes possession of such materials strongly corroborative of the actor's overall criminal purpose, communicates the intent to inflict harm, which constitutes the threatened use of force. *See Threat*, Black's Law Dictionary (12th ed. 2024). And even though such materials do not entail direct contact with the victim, they are capable of causing physical pain or injury, which matches the "physical force" aspect of the Guidelines. *See, e.g.*, *Verwiebe*, 874 F.3d at 261; *Hylor v. United States*, 896 F.3d 1219, 1223 (11th Cir. 2018) ("[E]ven poisoning is a violent felony under the elements clause. Poisoning someone is a physical, as opposed to an 'intellectual' or 'emotional,' use of force because it involves force 'exerted by and through concrete bodies.' And administering poison to kill someone is an intentional act that is 'capable of causing physical pain or injury.'" (internal citations omitted)); *cf. United States v. Castleman*, 572 U.S. 157, 170 (2014) (explaining that deceiving someone into drinking a poisoned beverage would constitute force for purposes of a domestic-violence conviction supporting an 18 U.S.C. § 922(g)(9) conviction). Further, if there exists any doubt, such conduct also constitutes an attempted use of force. *See Taylor*, 596 U.S. at 851, 856; *see also Attempt*, Black's Law Dictionary (12th ed. 2024). Therefore, we hold that attempted second-degree murder in Tennessee is a "crime of violence" under the Guidelines. *See Martin*, 2023 WL 2755656, at *7.

Contrary to Parham's argument, *Taylor* does not change this outcome. *Taylor* explained that an attempted Hobbs Act robbery does not constitute a crime of violence because "whatever a substantial step requires" for a Hobbs Act robbery, "it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person

or his property." 596 U.S. at 851. That is because "[a] completed Hobbs Act robbery does not require the use or attempted use of force; it can be committed by threat of force alone." *Martin*, 2023 WL 2755656, at *7. In other words, an attempted Hobbs Act robbery merely requires a defendant to attempt to threaten the use of force, not *actually* threaten use of force, so it did not categorically fit within the Guidelines' definition of a violent crime (which demands an actual threat of use of force). Here, attempted second-degree murder contains elements different from attempted Hobbs Act robbery. Importantly, attempted second-degree murder requires more than an attempted threat of force—rather, it necessitates a substantial step toward the commission of the crime, which includes an attempted use or a threatened use of force.

In sum, the least culpable way to commit attempted second-degree murder in Tennessee is to bring materials for the commission of the offense to or near the scene of the crime when the action is strongly corroborative of the actor's overall criminal purpose. And that least culpable conduct necessarily encompasses at least an attempted use or threatened use of physical force. Thus, the Guidelines' definition of a "crime of violence" and Tennessee's attempted second-degree murder statutory scheme are categorical matches, meaning Parham's predicate state offense is a crime of violence. The district court therefore properly calculated Parham's base offense level.

### III.

Parham also challenges his conviction under § 922(g)(1), the statute prohibiting felons from possessing firearms. He argues that § 922(g)(1) violates the Second Amendment on its face and as applied to him. But our recent opinion, *United States v. Williams*, 113 F.4th 637, 662–63 (6th Cir. 2024), forecloses his arguments.[4]

In *Williams*, we concluded that § 922(g)(1) is constitutional on its face because our Nation's "history reveals that legislatures may disarm groups of people, like felons, whom the legislature believes to be dangerous." *Id.* at 663. We further held that § 922(g)(1) is therefore

---

[4]We held this case in abeyance pending our then-forthcoming opinion in *United States v. Goins*, — F.4th —, 2024 WL 4441462 (6th Cir. 2024), which similarly involved challenges to the constitutionality of § 922(g)(1). But we issued *Williams* in the meantime, which, as set forth above, controls Parham's Second Amendment challenges here.

constitutional in "most applications," "so long as each member of that disarmed group has an opportunity to make an individualized showing that he himself is not actually dangerous." *Id.* at 657, 663. When considering such an as-applied challenge, we "may evaluate a defendant's entire criminal record." *Id.* at 663.

Parham's facial and as-applied challenges to § 922(g)(1) therefore fail. His criminal record contains numerous violent felonies, including two homicide-related convictions. For example, his attempted second-degree murder offense involved shooting a young child. Parham is exactly the type of individual our history and tradition allow Congress to disarm. *See id.* at 661–62 (rejecting an as-applied challenge by a defendant who was convicted of attempted murder, aggravated robbery, and possession of a firearm as a felon).

IV.

For these reasons, we affirm the judgment of the district court.