NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0049n.06

No. 24-1491

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 28, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| JOSHUA FORDHAM, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SUTTON, Chief Judge; MOORE and RITZ, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Joshua Fordham robbed two individuals in the parking lot of a Detroit deli at gunpoint. During the robbery, one of the victims pulled his own concealed firearm on Fordham, shooting Fordham in the chest; Fordham shot back, missing the victim. Following his arrest, Fordham was charged with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). At the motions stage, Fordham unsuccessfully moved to dismiss the indictment, arguing that § 922(g)(1) was unconstitutional both on its face and as applied to him. After entering a guilty plea, at sentencing Fordham argued against the application of a cross-reference provision of the United States Sentencing Guidelines ("the Guidelines") that increased his sentencing exposure due to his attempt to murder the victim who had shot him; that challenge was also unsuccessful. The district court ultimately sentenced Fordham to 121 months in prison.

On appeal, Fordham challenges the district court's denial of his motion to dismiss, arguing that § 922(g)(1) is unconstitutional as applied to him. And he challenges the propriety of the district court's application of the U.S.S.G. § 2K2.1(c)(1) cross-reference provision, arguing that

he did not possess the requisite intent at the time of the crime for his conduct to qualify as attempted first-degree murder. But because Fordham's criminal history presents ample evidence of his dangerousness, the Second Amendment does not bar his disarmament and conviction. And the district court did not clearly err in determining that Fordham's conduct constituted attempted first-degree murder and applying the appropriate Guidelines. For those reasons, we **AFFIRM** the district court.

## I. FACTUAL BACKGROUND

### A. Fordham's Attempted Robbery

On February 8, 2023, Joshua Fordham followed two individuals into and out of a delicatessen in Detroit, Michigan. R. 52 (PSR at ¶ 11) (Page ID #257). Once in the parking lot outside the deli, Fordham approached the individuals (Victims 1 and 2), threatening Victim 1 if he did not give Fordham his wallet. *Id.* After Victim 1 handed his wallet to Fordham, Fordham turned his firearm on Victim 1 and proceeded to pat down his pockets. *Id.* Victim 1—who had a concealed pistol license—then pulled out his own firearm, shooting at Fordham and hitting him in the chest. *Id.* at ¶ 11, 12 (Page ID #257). Fordham shot back, firing once before his firearm malfunctioned. *Id.* at ¶ 11 (Page ID #257). The two then ran in opposite directions. *Id.*[1]

Police arrived on the scene shortly after the shooting, having detected gunfire through the police department's Shot-Spotter technology. *Id.* at ¶ 12 (Page ID #257). Upon arriving, they discovered Fordham lying on the ground at the side of the building. *Id.* A firearm and a wallet containing Victim 1's identification were in his possession. *Id.*

---

[1]The entire encounter was caught on a surveillance camera affixed to the exterior of the deli. That video was made available to all parties in the case below and was provided to this court on appeal.

**B. The Proceedings Below**

A grand jury indicted Fordham on one count of possessing a firearm after being convicted of a felony offense in violation of 18 U.S.C. § 922(g)(1). R. 24 (Indictment at 1) (Page ID #61). At the time of the shooting outside the deli, Fordham had a criminal record including felony convictions for attempting to carry a concealed weapon, carrying a concealed weapon, armed robbery, and felony firearm possession. R. 52 (PSR at ¶ 14) (Page ID #257).

After entering an initial plea of not guilty, Fordham moved to dismiss the indictment, arguing that 18 U.S.C. § 922(g)(1) was unconstitutional both on its face and as applied to him under the framework set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). R. 42 (Mot. to Dismiss at 12) (Page ID #159). After hearing oral arguments from both parties as to the motion, the district court denied the motion from the bench. R. 68 (Mot. to Dismiss Hr'g Tr. at 11–13) (Page ID #413–15). Adopting in full its reasoning from a prior case, *United States v. Keels*, 680 F. Supp. 3d 841 (E.D. Mich. 2023), the district court reasoned that there was no need to conduct an individualized analysis of Fordham's criminal history to determine the constitutionality of § 922(g)(1) as applied to him because the felon-disarmament statute is supported by history and consistent with Supreme Court precedent. *Id.* at 12–13 (Page ID #414–15); *see Keels*, 680 F. Supp. 3d at 849. The district court then issued an order denying the motion the same day. R. 47 (Mot. to Dismiss Order) (Page ID #224).

Shortly thereafter, Fordham entered a guilty plea. R. 69 (Plea Hr'g Tr. at 13) (Page ID #430). Fordham entered his plea without a written plea agreement. *Id.* at 4, 18 (Page ID #421, 435); R. 52 (PSR at ¶ 71) (Page ID #266).

3

In preparation for sentencing, the United States Probation Office prepared a presentence investigation report ("PSR") calculating Fordham's proposed sentence under the Guidelines. R. 52 (PSR at ¶¶ 20–30) (Page ID #258–59). Beginning with U.S.S.G. § 2K2.1, the Guidelines provision applicable to firearms offenses, the Probation Office then applied § 2K2.1(c)(1), a cross-reference provision that increases a defendant's base offense level "[i]f the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense." *Id.* at ¶ 21 (Page ID #258) (quoting § 2K2.1(c)(1)). The PSR concluded that Fordham had used the firearm in connection with an assault with the intent to murder Victim 1. *Id.* at ¶ 21–22 (Page ID #258). Under the cross-reference, the Probation Office then applied § 2X1.1, the Guidelines provision applicable to attempt, solicitation, and conspiracy offenses, upon determining that the resulting base offense level of 33—the base offense level under § 2A2.1(a)(1), the Guidelines provision for assault with the intent to commit first-degree murder—would be greater than Fordham's base offense level without applying the cross-reference. *Id.* at ¶ 22 (Page ID #258). The Probation Office therefore calculated Fordham's base offense level under § 2X1.1(a) as 33. *Id.* After subtracting three levels for acceptance of responsibility, the Probation Office calculated Fordham's total offense level as 30. *Id.* at ¶ 31 (Page ID #259). Combined with his criminal history category of III, Probation concluded that Fordham's resulting advisory Guidelines range was 121 to 151 months of imprisonment. *Id.* at ¶ 70 (Page ID #266).

Fordham filed written objections to the PSR, objecting to the Probation Office's characterization of the facts of the offense conduct and to the applicability of the cross-reference provision. R. 52 (PSR at 18–29) (Page ID #271–82). The government responded to those written

objections, pointing to the surveillance video of the encounter in debunking Fordham's version of events. *Id.* at 46–49 (Page ID #299–302). After reviewing the objections and response, the Probation Office concluded that the original PSR was correct and did not amend. *Id.* at 21 (Page ID #274).

At sentencing, Fordham once again objected to the applicability of the cross-reference provision to the facts of his case. R. 70 (Sent'g Tr. at 6) (Page ID #443). Specifically, Fordham objected to the applicability of § 2A2.1(a)(1), arguing that the government had failed to establish the requisite intent for attempted first-degree murder. *Id.* at 6–8 (Page ID #443–45). Because he fired his firearm only in response to Victim 1 shooting at him first, Fordham argued, he lacked the specific intent to kill required for a finding of attempted first-degree murder. *Id.* at 8, 13–14 (Page ID #445, 450–51). In response, the government referred the court to the surveillance footage of the encounter and argued that Fordham's specific intent could be inferred from the facts that one of the victims had reported that Fordham had threatened to kill Victim 2 if Victim 1 did not hand over his wallet; that Fordham pointed a firearm towards Victim 1 and seemingly attempted to fire a shot[2]; and that after Fordham and Victim 1 ran away from each other, Fordham turned around and fired a shot towards Victim 1. *Id.* at 16–18 (Page ID #453–55).

After hearing argument from both parties, the district court determined, "by a preponderance of the evidence, and based upon the video . . . that had the victim been struck by the bullet and died, the assault would have matured into a murder," finding "that Mr. Fordham's

---

[2]The PSR characterizes this series of events as follows: while Fordham patted down Victim 1, Victim 1 "pulled out his own firearm and shot at FORDHAM," at which point Fordham "shot back at the victim once before his firearm malfunctioned and failed to work." R. 52 (PSR at ¶ 11) (Page ID #257). It is unclear from the PSR and from the surveillance video at what point the firearm malfunctioned. In any event, Fordham was able to shoot the firearm in Victim 1's direction at least once, because the bullet from his firearm missed Victim 1 and hit the window of Fordham's own car.

conduct constituted an intent to kill or intent to do great bodily harm" because the act "was committed during the perpetration of a robbery." *Id.* at 20–21 (Page ID #457–58). The district court therefore determined that Fordham's act of shooting at Victim 1, had Victim 1 died, would have constituted first-degree murder within the meaning of § 2A2.1(a)(1) and applied the requisite 33-point base offense level. *Id.* at 21 (Page ID #458).

After deducting three levels for acceptance of responsibility, the district court concluded that Fordham's resulting Guidelines range was 121 to 150 months. *Id.* The district court considered the arguments of counsel, Fordham's allocution, letters submitted on behalf of Fordham, and relevant 18 U.S.C. § 3553(a) factors. *Id.* at 27–29 (Page ID #464–66). The district court then sentenced Fordham to 121 months of imprisonment, a sentence at the lowest end of his Guidelines range. *Id.* at 30 (Page ID #467); R. 64 (Judgment at 2) (Page ID #394). Fordham timely appealed. R. 65 (Notice of Appeal at 1) (Page ID #400).

## II. DISCUSSION

### A. Standard of Review

Fordham raises two issues on appeal. First, he challenges the constitutionality of 18 U.S.C. § 922(g)(1) as applied to him. We review such challenges de novo. *United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024).

Second, Fordham challenges his sentence, arguing that the district court improperly applied the U.S.S.G § 2K2.1(c)(1)(A) cross-reference provision. "We review the district court's legal interpretation of the sentencing guidelines de novo and its factual findings under the clearly erroneous standard." *United States v. Mukes*, 980 F.3d 526, 533 (6th Cir. 2020). And we "give 'due deference' to a district court's application of the Guidelines to the facts" of a particular

6

defendant's case. *United States v. Jones*, 81 F.4th 591, 600 (6th Cir. 2023) (quoting *United States v. Wallace*, 51 F.4th 177, 183 (6th Cir. 2022)).

## B. Fordham's As-Applied § 922(g)(1) Challenge

Fordham's first assignment of error is that the district court erred in denying his motion to dismiss the indictment on the ground that § 922(g)(1) is unconstitutional as applied to him. As an initial matter, the government argues that we should forego analysis of Fordham's *Bruen* challenge because his unconditional guilty plea "waives all non-jurisdictional defects." Appellee Br. at 10. But we need not address the government's waiver argument, because Fordham's challenge fails even on de novo review. *See, e.g.*, *United States v. Hewlett*, No. 23-2040, 2024 WL 4564645, at *4 (6th Cir. Oct. 24, 2024) (declining to consider the government's waiver argument where defendant's as-applied challenge to § 922(g)(1) failed plain-error review).

Fordham's challenge arises from the Supreme Court's decision in *Bruen* setting forth a new framework for evaluating the constitutionality of provisions curtailing firearm ownership and requiring that any such regulation be consistent with our nation's "history and tradition." 597 U.S. at 22; *see also United States v. Rahimi*, 602 U.S. 680, 692 (2024) (holding that, to determine whether a firearm regulation is permissible, we are to consider whether the regulation is "consistent with the principles that underpin our regulatory tradition"). We evaluated the constitutionality of § 922(g)(1) under this new framework in *United States v. Williams*, in which we concluded that the statute "is constitutional on its face and as applied to dangerous people." 113 F.4th 637, 662–63 (6th Cir. 2024). Thus, in our circuit, an individual seeking to dismiss a § 922(g)(1) charge must demonstrate "that he himself is not actually dangerous" to succeed on a Second Amendment challenge. *Id.* at 663.

7

Fordham fails to make such a showing. To determine whether an individual is dangerous, courts are to "make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction." *Id.* "[W]hen considering an individual's dangerousness, courts may evaluate a defendant's entire criminal record—not just the specific felony underlying his section 922(g)(1) prosecution." *Id.* Although we have avoided creating "bright categorical lines" to determine what criminal conduct demonstrates dangerousness, we have noted that "violent crimes are at least strong evidence that an individual is dangerous." *Id.* at 658, 660.

In determining Fordham's dangerousness, then, we look to the offense conduct—which involved Fordham robbing two people at gunpoint and shooting a firearm during the commission of the armed robbery—as well as Fordham's previous convictions for carrying a concealed weapon, felony firearm possession, and armed robbery. R. 52 (PSR at ¶¶ 33–35) (Page ID #259–61). Fordham's 2013 conviction for armed robbery is particularly probative of his dangerousness; in that instance, Fordham was in a vehicle with three individuals when he produced a firearm, demanded the individuals' cell phones, took the keys out of the ignition, and shot one of the individuals in the leg. *Id.* at ¶ 35 (Page ID #261). The violent nature of Fordham's past felony convictions and of the offense conduct involved in the present offense indicates that Fordham "is exactly the type of individual our history and tradition allow Congress to disarm." *United States v. Parham*, 119 F.4th 488, 496 (6th Cir. 2024) (holding that § 922(g)(1) was constitutional as applied to a defendant whose criminal record included two homicide-related convictions, including the attempted second-degree murder of a young child); *see also Morton*, 123 F.4th at 499–500 (holding that § 922(g)(1) was constitutional as applied to a defendant previously convicted of

wanton endangerment for shooting at an ex-girlfriend and assault resulting from a domestic-violence incident); *United States v. Goins*, 118 F.4th 794, 804–05 (6th Cir. 2024) (holding that Congress could lawfully disarm a defendant who had been charged five times in an eight-year period with driving under the influence).

Fordham argues that we should nevertheless remand because the district court failed to allow him the opportunity to make "an individualized showing that he himself is not actually dangerous" as required under *Williams*. 113 F.4th at 663. But the district court did not have the benefit of *Williams* when it denied Fordham's motion to dismiss in January 2024, seven months before *Williams* was decided. Had the district court been on notice of the requirement that it allow Fordham to make such a showing, the district court undisputably would have come to the conclusion that Fordham was a sufficiently dangerous person to warrant his disarmament. *See, e.g.*, *Morton*, 123 F.4th at 500 (holding that remand to the district court for a reassessment of dangerousness under *Williams* was unnecessary where the defendant's criminal record "demonstrates dangerousness, specifically that he has committed 'violent' crimes 'against the person'") (quoting *Williams*, 113 F.4th at 658). Because Fordham clearly falls within the category of individuals that may be lawfully disarmed, remand would be an inappropriate remedy here. We therefore conclude that § 922(g)(1) is constitutional as applied to Fordham and affirm the district court's denial of Fordham's motion to dismiss.

## C. The Attempted Murder Cross-Reference

Fordham's second assignment of error is that the district court improperly applied the U.S.S.G. § 2K2.1(c)(1)(A) cross-reference provision in calculating his base offense level because he lacked the requisite intent for a finding of attempted first-degree murder under U.S.S.G.

§ 2A2.1(a)(1). Because we review the district court's factual findings for clear error, its determination that Fordham's conduct constituted attempted first-degree murder "is not clearly erroneous 'so long as the finding is plausible in light of the record viewed in its entirety.'" *United States v. Miller*, 73 F.4th 427, 430 (6th Cir. 2023) (quoting *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021)); *see United States v. Krimsky*, 230 F.3d 855, 860 (6th Cir. 2000) ("Whether a defendant has the requisite intent . . . is a question of fact . . . .").

We look to the federal murder statute to determine what constitutes first-degree murder. *See United States v. Mills*, __ F.4th __, No. 24-1270, 2025 WL 211896, at *3 (6th Cir. Jan 16, 2025). "Under that statute, '[m]urder is the unlawful killing of a human being with malice aforethought.'" *Id.* (quoting 18 U.S.C. § 1111(a)). Additionally, the statute dictates that "[e]very murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . is murder in the first degree." 18 U.S.C. § 1111(a).

"[A]n attempt to commit murder," meanwhile, "requires a specific intent to kill." *Miller*, 73 F.4th at 430 (quoting *United States v. Howell*, 17 F.4th 673, 690 (6th Cir. 2021)). "To apply the attempted-murder cross-reference, a district court must therefore find 'by a preponderance of the evidence' that the defendant 'possessed the specific intent to kill." *Id.* (quoting *Howell*, 17 F.4th at 689–90). "The specific intent to kill 'may be proven by inference from any facts in evidence.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citation omitted); *see also United States v. Warbonnet*, 750 F.2d 698, 700 (8th Cir. 1984).

Here, the district court found, based upon the surveillance video, that after Victim 1 shot Fordham in the chest, "Fordham retreats, points the gun, retreats again, points the gun and fires." R. 70 (Sent'g Tr. at 20) (Page ID #457). "This fact alone"—that is, the district court's finding that

Fordham aimed a gun in Victim 1's direction and fired—"supports a finding of specific intent." *United States v. Grant*, 15 F.4th 452, 458 (6th Cir. 2021); *see also United States v. Caston*, 851 F. App'x 557, 564 (6th Cir. 2021) ("[W]e have upheld a district court's finding of the intent to kill based solely on the fact that the defendant shot in the victim's direction such that the bullet could have struck him.") (citing *United States v. James*, 575 F. App'x 588, 590, 596–97 (6th Cir. 2014)). The record therefore supports the inference that Fordham had the specific intent to kill Victim 1 when he pointed a gun at Victim 1 and fired in his direction.

Fordham argues that he lacked the requisite intent to kill because he shot at Victim 1 only as a response to Victim 1 shooting at him first. Appellant Br. at 19. But neither of the two unreported district court cases to which Fordham refers supports the notion that specific intent to kill is vitiated when a victim is the first to shoot an initial aggressor. *United States v. McCaslin*, No. 1:21-cr-10120-JDB-1, 2022 WL 16921695, at *6 (W.D. Tenn. Nov. 14, 2022) (holding that the attempted-murder cross-reference was inapplicable where the defendant was not the first aggressor); *United States v. Pyle*, No. 15-00054, 2017 WL 2532324, at *3 (M.D. Tenn. June 12, 2017) (sustaining an objection to the attempted-murder cross-reference where the defendant was not the initial aggressor and where his firearm discharged accidentally). Nor are we aware of any authority, in our circuit or otherwise, supporting Fordham's theory. Accordingly, we conclude that the district court did not err in finding, by a preponderance of the evidence, that Fordham attempted the first-degree murder of Victim 1 and in applying the resultant 33-point base offense level under U.S.S.G. § 2A2.1(a)(1).

## III.  CONCLUSION

We hold that 18 U.S.C. § 922(g)(1) is constitutional as applied to Fordham.  And the district court did not clearly err when it concluded that Fordham's conduct constituted attempted first-degree murder and applied the U.S.S.G. § 2K2.1(c)(1) cross-reference provision as a result. We **AFFIRM** the judgment of the district court.