NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0557n.06
Case No. 24-1488

| | | | |
|---|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Dec 03, 2025<br>KELLY L. STEPHENS, Clerk | |

UNITED STATES of AMERICA,

    Plaintiff-Appellee,

v.

DEAIRES MARTEZ FOSTER,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: BATCHELDER, GILMAN, and LARSEN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** A criminal defendant moved to dismiss his federal indictment under 18 U.S.C. § 922(g)(1) on the grounds that the statute is unconstitutional on its face and as applied to him. After the district court denied the motion, the defendant entered a guilty plea and now appeals the denial of the constitutional challenge.[1] We AFFIRM.

**I.**

On July 27, 2016, a federal grand jury returned a multi-count indictment against 13 defendants, including, as relevant here, defendant Deaires Martez Foster (a.k.a. "Trigger") as to Count One, Racketeering Conspiracy, 18 U.S.C. § 1962(d) (RICO). *See United States v. Hamilton*, No. 2:16-cr-20062, Dkt. No. 194 (E.D. Mich. July 27, 2016). The indictment alleged that Foster was a member of a Detroit street gang known as the "Rollin 60s Crips," Indictment ¶ 8,

---

[1] The government moved to dismiss this appeal on the contention that Foster's claims are barred by his unconditional guilty plea. Foster opposed the motion, and a motions panel of this court referred the motion to this merits panel on the basis that "the government's arguments are closely tied to the merits and are in the nature of a motion to affirm." Because we affirm the district court's judgment on the merits, we deny the motion as unnecessary.

and that he had committed several "overt acts," including: on July 19, 2009, he posted a message on Facebook offering $100 to any Rollin 60s Crips gang member for the murder of a rival gang member, ¶ 13(a)(4); on April 25, 2010, he committed an armed robbery with a sawed-off shotgun, taking a man's cell phone, watch, money, and jacket, ¶ 13(a)(9); on October 4, 2011, he posted a message on Facebook of his plans to murder rival gang members, ¶ 13(a)(22); in July and August 2011, he negotiated prices and offered to sell marijuana, ¶ 13(b)(13-16); in October 2011, he advertised prices for marijuana; ¶ 13(b)(20-21); and on May 27, 2009, he received from a coconspirator a handgun and a machine gun for use in committing robberies, ¶ 13(c)(2).

On March 27, 2017, Foster signed a Rule 11 Plea Agreement, in which he agreed to enter a guilty plea to Count One (RICO Conspiracy) in exchange for an agreed-upon guidelines sentencing range of 51 to 63 months. *See Hamilton*, No. 2:16-cr-20062, Dkt. No. 365, at 13 (Mar. 28, 2017). The Plea Agreement described Foster's underlying criminal conduct as: "On April 25, 2010, . . . Foster, wearing a blue bandanna over his face, approached the man, pointed [a] sawed-off shotgun at him and stole the victim's cell phone, watch, money and a jacket." *Id*. at 4. And "Foster also sold drugs on behalf of the gang," though that allegation was later amended at the plea hearing to say, "Foster also *assisted the sale of* drugs on behalf of the gang." *Id*. (emphasis added). In the Plea Agreement, Foster specifically agreed to forfeit his firearms. *Id*. at 8.

At Foster's plea hearing, held that same day, March 27, 2017, the court undertook an extensive colloquy with Foster, which began by confirming Foster's understanding of the Plea Agreement. *See Hamilton*, No. 2:16-cr-20062, Dkt. No. 395, at 9, 15, 19 (Apr. 26, 2017). Eventually, the court asked Foster to specify, "What did you do to be guilty, sir?" to which Foster explained: "I, at 16, I joined a gang, the Rollin 60s Crips and also committed an armed robbery at 16. Committed an armed robbery. Also on Facebook I helped - - I never sold drugs but I helped

- - I gave knowledge to people that were selling drugs, I gave advice." *Id*. at 20-21. The court followed up: "So on page 4 [of the Rule 11 Plea Agreement], it has this armed robbery of a person involving a sawed off shotgun and stole the person's cell phone, watch, money and a jacket; is all that true?" Foster answered, "Yes." *Id*. at 22. Ultimately, the court accepted the Rule 11 Plea Agreement and accepted Foster's plea of guilty to Count One. *Id.* at 24.

Almost a year later, on February 6, 2018, the court held a sentencing hearing, accepted Foster's Plea Agreement (again), entered judgment, and imposed a 35-month prison sentence. *See Hamilton*, No. 2:16-cr-20062, Dkt. No. 567 (Mar. 13, 2018); *see also* Dkt. Minute Entry (Feb. 6, 2018) (noting that "Sentencing held as to Deaires Martez Foster. Disposition: Rule 11 Plea Agreement accepted by the Court."). On that same day, February 6, 2018, Foster signed a "Stipulated Preliminary Order of Forfeiture," which referred to Foster's concession in his Plea Agreement that he would forfeit his firearms, specifically his Marlin 12-gauge shotgun. *See Hamilton*, No. 2:16-cr-20062, Dkt. No. 570, at 2, 6 (Mar. 13, 2018). The docket does not contain a presentence report (PSR) or a transcript of the sentencing hearing. Foster did not appeal and, according to the PSR for the present case, he completed his incarceration in October 2020. Thereafter, Foster reportedly completed his supervised release in October 2022.

On July 29, 2023, Foster and his 11-year-old son were at a convenience store when two police officers on patrol noticed Foster outside the store and, correspondingly, Foster noticed the patrol car and quickly turned around and hurried back into the store. The officers found this furtive behavior suspicious, which led them to suspect that Foster could be hiding a weapon or contraband. So, they parked in the store's parking lot and entered on foot. When the officers saw the butt of a handgun protruding from Foster's pants pocket, they initiated a *Terry* stop to investigate whether Foster had a Michigan concealed permit license (CPL) allowing him to carry the gun.

3

The officers confronted Foster and asked if he had a valid CPL, to which he answered that he did not have his wallet with him. The officers determined that Foster's possession of the firearm was likely illegal, and that they were justified in detaining and disarming him. They arrested Foster and about two weeks later, on August 15, 2023, a federal grand jury returned an indictment charging Foster as a felon in unlawful possession of a firearm, 18 U.S.C. § 922(g)(1).

On December 22, 2023, Foster moved to dismiss the indictment, claiming that § 922(g)(1) is unconstitutional on its face and as applied to him. Foster argued that pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the possession of a firearm—even by a dangerous convicted felon—is a right protected by the Second Amendment to the Constitution. The district court denied the motion, holding that *Bruen* did not overrule *District of Columbia v. Heller*, 554 U.S. 570 (2008), under which § 922(g)(1) was presumptively constitutional. *United States v. Foster*, No. 23-cr-20464, 2024 WL 310189 (E.D. Mich. Jan. 26, 2024) (relying on *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010)).

Meanwhile, on December 26, 2023, Foster had moved to suppress the firearm and any incriminating statements on the basis that the officers did not have reasonable suspicion to approach him, initiate the *Terry* stop, or ask him if he had a Michigan CPL. The district court held a hearing to admit testimony from the two officers and to review the video footage of the encounter, from which the court found that the stop and seizure were lawful. It denied the motion. *United States v. Foster*, No. 2:23-cr-20464, 2024 WL 409370 (E.D. Mich. Feb. 2, 2024).

On February 22, 2024, the district court held a change-of-plea hearing at which Foster entered a guilty plea to the felon-in-possession charge. The court accepted the plea and ordered the PSR in preparation for sentencing. At the sentencing hearing on May 30, 2024, the court found: a base offense level of 14, minus two for acceptance of responsibility, for a total offense level of

12; a criminal history Category II; and an advisory range of 12 to 18 months. The court sentenced Foster to six months as time served, plus six months of home confinement, followed by 18 months of supervised release.

Foster appealed, claiming that 18 U.S.C. § 922(g)(1) is unconstitutional.

## II.

Foster claims that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and that *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), is wrong in several ways. Regardless of Foster's views on *Williams*'s alleged flaws—and his arguments to that effect—*Williams* is binding Sixth Circuit precedent and we as a panel cannot overrule it. *See United States v. Ferguson*, 868 F.3d 514, 515 (6th Cir. 2017) ("One panel of this court may not overrule the decision of another panel; only the en banc court or the United States Supreme Court may overrule the prior panel."). And *Williams* held, among other things, that § 922(g)(1) is constitutional on its face. *Williams*, 113 F.4th at 657. So, Foster's facial challenge to § 922(g)(1) necessarily fails.

But Foster also claims that § 922(g)(1) is unconstitutional as applied to him because he is not "dangerous" based on the "dangerous person" test set out in *Williams*. An as-applied challenge alleges that the statute in question is unconstitutional as applied to the defendant's particular conduct and circumstances. *See Zillow, Inc. v. Miller*, 126 F.4th 445, 455 (6th Cir. 2025). When a defendant appeals the district court's denial of a challenge to the constitutionality of a federal statute, our review is de novo. *United States v. Goins*, 118 F.4th 794, 797 (6th Cir. 2024).

In *Williams*, 113 F.4th at 663, we held that § 922(g)(1) is constitutional as applied to "dangerous people," so in an as-applied challenge, the court must afford the defendant "an opportunity to make an individualized showing that he himself is not actually dangerous." The defendant carries the burden of proving that he is not dangerous. *Id.* at 662. To decide a

defendant's claim that he is not dangerous, the court "make[s] [a] fact-specific dangerousness determination[] [by] taking account of the unique circumstances of the individual," *id*. at 663, and by "consider[ing] [the] defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction," *id*. at 659-60. In this assessment, violent crimes—such as murder, rape, assault, and robbery—are "at least strong evidence that an individual is dangerous, [even] if not totally dispositive." *Id*. at 658. And crimes such as drug trafficking, that "do not always involve an immediate and direct threat of violence against a particular person," may still "pose a significant threat of danger" and establish dangerousness. *Id*. at 659.

As detailed above, Foster's criminal record contains a conviction based on an armed robbery and participation in his gang's drug-trafficking endeavors. "[A]rmed robbery is particularly probative of [a defendant's] dangerousness." *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025); *United States v. Vaughn*, No. 23-5790, 2024 WL 4615853, at *2 (6th Cir. Oct. 30, 2024) ("[C]ertain convictions, like aggravated robbery[,] . . . are highly probative and, alone, would almost certainly be sufficient to conclude that the defendant presented a danger to the public such that they could be constitutionally disarmed."). Similarly, "drug trafficking often motivates violent crime." *United States v. Oravets*, No. 24-3817, 2025 WL 2682632, at *1 (6th Cir. Sept. 19, 2025); *United States v. Palm*, No. 24-1524, 2025 WL 1927724, at *1 (6th Cir. July 14, 2025) ("Palm has a conviction for drug trafficking, which presents an inherent threat of danger to the public."); *Fenderson v. United States*, No. 24-3643, 2024 WL 5347131, at *1 (6th Cir. Dec. 13, 2024) ("Fenderson has prior convictions for marijuana and heroin trafficking. Drug trafficking can pose a significant threat of danger and thus can justify a finding of danger." (quotation marks and citation omitted)). In short, "[t]he violent nature of [Foster]'s past felony convictions . . . indicates that [Foster] 'is exactly the type of individual our history and

tradition allow Congress to disarm.'" *See Fordham*, 2025 WL 318229, at *5 (quoting *United States v. Parham*, 119 F.4th 488, 496 (6th Cir. 2024)).

Foster resists this with two contentions. First, he contends that "[t]he underlying facts of Mr. Foster's RICO conviction are not properly documented." Appellant Br. at 41. This contention is unpersuasive given his criminal record discussed above. And he concedes that "[t]he overt acts listed in the plea agreement were an armed robbery and his assistance in the sale of drugs on behalf of a gang." *See Hamilton*, No. 2:16-cr-20062, Dkt. No. 365, at 13.

His other contention is that he is not dangerous *now* because he "was 22 years old at the time of this conviction," whereas the "part of the brain [that] controls impulse control, complex decision making, inhibition, and planning" "does not reach maturity until around age 25." Appellant Br. at 42-43. If we understand this correctly, he is *not* arguing that 22-year-old, violent gang members are not dangerous; rather, he is arguing that it does not matter how dangerous he was when he was 22 (or any time before he turned 25), all that matters is his dangerousness now. Put another way, Foster is arguing that an otherwise dangerous convict can shed his dangerousness by celebrating his 25th birthday. Neither law nor common sense supports this argument.

But hypothetically accepting that argument, it begs the question: What is Foster like now? And as it turns out, Foster's recent motion to revoke his detention order put that question to the district court, which reported that Foster had "repeatedly failed to comply with monitoring conditions of his pretrial release[,] . . . failed to provide an accurate address for where he will reside during bond, failed to appear for drug testing, and failed to remain at the inpatient treatment facility." *United States v. Foster*, No. 23-cr-20464, 2024 WL 987565, at *3 (E.D. Mich. Mar. 7, 2024). The court emphasized Foster's "inability to comply with the conditions imposed by the treatment facility," *id.*, "that [his] drug use has become a significant factor [that] has had an impact

on his decision making," *id*. at \*2, and "that [he] has a drug problem that makes him a . . . possible danger to others should he engage in drug use," *id*. From this, the court concluded that Foster had "demonstrate[d] both a high risk of flight, and dangerousness given that [he] has substance abuse and mental health issues." *Id*. Therefore, Foster's age did not dispel his dangerousness.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.